BOSTON & SANDWICH GLASS COMPANY *vs.* H. K. MOORE.

Suffolk.   Nov. 11, 1875. — Jan. 10, 1876.   ENDICOTT & LORD JJ., absent.

The following instrument signed by the defendant was delivered to the plaintiff: "I guarantee the sum of five hundred dollars value in glass shades purchased by my son A. from B. Terms of purchase to be sixty days from date of invoice, and, if not paid within ninety days, draft to be drawn on me for the amount." *Held,* that it was not a continuing guaranty. *Held, also,* that parol evidence of the previous dealings, or of the dealings contemplated, between the creditor and the principal

debtor; or that the guarantor had previously agreed to give the plaintiff a guaranty for future advances, and that the goods were sold relying on such guaranty; or that the relations of the principal parties were well known to the guarantor, was not admissible to show that the instrument was other than a guaranty of a single transaction.

CONTRACT upon the following written guaranty, signed by the defendant: " Boston, September 10, 1872. For and in consideration of the sum of one dollar herein paid, the receipt of which is hereby acknowledged, I guarantee the sum of five hundred dollars ($500) value in glass shades purchased by my son, C. C. L. Moore, from the Boston and Sandwich Glass Company. Terms of purchase to be sixty days from date of invoice, and, if not paid within ninety days, draft to be drawn on me for the amount."

At the trial in the Superior Court, before *Allen*, J., the plaintiff offered to prove that it was a corporation doing an extensive business in the manufacture and sale of all kinds of glass ware, and that the two sons of the defendant, C. C. L. Moore and F. K. Moore, went into the business of selling glass shades in New Orleans, Louisiana, and that C. C. L. Moore was a clerk in the United States Navy Yard, in Charlestown, in this Commonwealth, and had no means of his own, and that F. K. Moore resided at New Orleans, and there sold the goods sent to him by his brother, C. C. L. Moore ; that the plaintiff had dealt with C. C. L. Moore to a considerable extent, prior to September 10, 1872, and so continued to deal until that time, he, C. C. L. Moore, buying glass shades in small quantities and principally for cash, and sending them to his brother, F. K. Moore, to be by him sold in New Orleans ; that the defendant knew what the relations were between the plaintiff and C. C. L. Moore, and on or about September 10, 1872, C. C. L. Moore, with the knowledge of the defendant, endeavored to obtain from the plaintiff a much larger quantity of goods than formerly, and on a credit of two months' time, and represented to the plaintiff that he and his brother in New Orleans were going to extend and build up a large business in said glass shades in New Orleans, and wanted to purchase a large quantity of goods, and to establish a credit for an indefinite length of time ; and as the plaintiff was unwilling to trust C. C. L. Moore, without security, and to induce the plaintiff to sell him said goods as aforesaid, C. C. L. Moore offered to have the de-

fendant give a guaranty to the plaintiff in the sum of $500, on account of the sales that might thereafter be made by the plaintiff to said C. C. L. Moore ; and one of the agents of the plaintiff thereupon called upon the defendant and made known to him all the facts, representations and negotiations that had passed between said C. C. L. Moore and the plaintiff, and also what the future course of business and dealing was to be between the parties above spoken of ; and thereupon the defendant agreed to give such a guaranty for the purpose of assisting his sons and to build up the said business ; that the agent of the plaintiff drew up the guaranty mentioned above, and the defendant signed and delivered it to the plaintiff's said agent, and the plaintiff, relying upon said guaranty, immediately commenced to deliver goods and to charge them to the said C. C. L. Moore, and to ship them at his request to New Orleans, and that goods to the amount of $2049.22 were so shipped between September 13, 1872, and April 19, 1873, of which sum the said C. C. L. Moore paid to the plaintiff $1000 in small sums on account at different times out of funds that he received from his brother in New Orleans ; that in June, 1873, one of the agents of the plaintiff called upon the defendant and told him how much the indebtedness of his son, C. C. L. Moore, to the plaintiff was, and that it had been ninety days overdue, and demanded of him payment of the five hundred dollars that he had guaranteed to the plaintiff ; and that on July 10, 1874, the plaintiff presented to the defendant a draft drawn by the plaintiff on him for the sum of $500 on the said account, and acceptance and payment of said draft was refused , that the indebtedness of C. C. L. Moore to the plaintiff still remains unpaid, to the amount of about $1100.

The defendant contended that upon the facts offered to be proved, so far as competent, the action could not be maintained ; that the guaranty did not remain in force after $500 worth of goods had been delivered to said C. C. L. Moore, and paid for, as stated in the plaintiff's offer of proof ; and that the proof offered was not competent and sufficient to show that the defendant was liable for any goods furnished after the $500 worth first delivered under the guaranty were paid for.

The judge, by consent of parties, reported the questions of law so arising for the determination of this court.  If the action could

not be maintained, judgment was to be entered for defendant otherwise the case to stand for trial.

*M. Holbrook*, for the plaintiff.

*C. D. Adams*, for the defendant, was not called upon.

COLT, J.  The question submitted by this report is whether the instrument declared on is to be construed as a continuing guaranty which affords security to the plaintiff for credits given to the principal in successive transactions, or as a guaranty confined to one transaction, and therefore satisfied by a single purchase of the goods named to the specified amount followed by payment for the same.

The rules which govern the construction of written contracts are to be applied to this ; one of which is, that where there is no ambiguity in the terms, the writing itself must be alone consulted in ascertaining the intention ; parol evidence to vary its contracts is excluded.

In this contract the language, as applied to the subject matter, discloses no ambiguity.  There is nothing in it which fairly gives rise to the inference that it is intended to apply to more than one purchase.  The liability assumed cannot be enlarged or diminished by evidence of the previous dealings, or of the dealings contemplated, between the creditor and the principal debtor ; or that the defendant had previously agreed to give the plaintiff a guaranty for future advances, and the goods were sold relying on such a guaranty ; or that the relations of the principal parties were well known to the surety.  The question is not what would have been a fit and proper contract for the defendant to have made under all the circumstances, but what contract did he make. This contract is confined to the purchase of a single quantity of goods of a specified value, for which, if not paid for within sixty days from the date of invoice, the plaintiff is to draw on the defendant for the amount.

In *Hatch* v. *Hobbs*, 12 Gray, 447, cited by the plaintiff, the agreement was to pay for goods drawn out from time to time, " this guaranty to remain good until further order, or until April 1."  In *Bent* v. *Hartshorn*, 1 Met. 24, to pay for goods purchased " at any time hereafter."  And in *Nottingham Hide Co.* v. *Bottrill*, L. R. 8 C. P. 694, to pay " any account he [the principal] may have with you ; and when to the contrary we will write you."          *Judgment for the defendant.*