DAVID L. SHERMAN & another *vs.* JAMES MULLOY.

Suffolk.    May 19, 1899. — June 30, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Contract — Continuing Guaranty.*

The following instrument, signed by the defendant, "I, the undersigned, agree to
be holden for stock delivered to A. to the amount of two hundred dollars ($200),
and agree to pay the same," is not a continuing guaranty, and ceases to be bind-
ing as soon as the plaintiff has furnished A. goods to the amount of two hundred
dollars and has received pay therefor.

CONTRACT, on a written instrument signed by the defendant.
Trial in the Superior Court, without a jury, before *Bond*, J.,
who refused to rule that the instrument was not a continuing
guaranty, and was exhausted and satisfied when goods had been
furnished to Coffin, the person named therein, by the plaintiffs,
to the amount of two hundred dollars, and they had received
their pay therefor, and found for the plaintiffs in the sum of two
hundred dollars.    The defendant alleged exceptions, which ap-
pear in the opinion.

*A. P. Worthen*, for the defendant.

*F. W. Adams*, for the plaintiffs.

KNOWLTON, J.    On May 24, 1897, the plaintiffs were dealers
in building material, doing business under the name of the Rox-
bury Planing and Moulding Company.    One Coffin, a contractor
and builder, with whom they had had some previous dealings,
applied to them for stock or material to be used in his business.
They refused to deliver it to him upon credit unless he furnished
them with satisfactory security.    He went away and subse-
quently returned, on the same day, and gave them as security
a paper signed by the defendant, as follows :· " Boston, May 24,
1897.    Rox. Plng. & Mldg. Co., Dear Sir: I, the undersigned,
agree to be holden for stock delivered to A. E. Coffin to the
amount of two hundred dollars ($200), and agree to pay the
same.    James Mulloy."    Thereupon the plaintiffs furnished him
with goods from time to time up to November 15 of the same
year, amounting to about nine hundred dollars, and received

payment on account of the sales, such that at the date of the writ there remained due them a balance of two hundred and seventy-one dollars. At the time of signing the guaranty the defendant was indebted to Coffin to an amount exceeding two hundred dollars, and about August 21, 1897, Coffin having exhibited receipts of the plaintiffs which showed payments to them of sums amounting to more than two hundred dollars for goods sold after the delivery of the guaranty, he paid Coffin what he owed him. The only question in the case is whether the instrument was a continuing guaranty, or whether it ceased to be binding as soon as the plaintiffs had furnished Coffin goods to the amount of two hundred dollars and had received pay therefor.

The answer to the question depends upon the meaning of the instrument according to ordinary rules of interpretation. Does the paper indicate an intention on the part of the defendant that the plaintiffs should sell goods to Coffin from time to time until notified to stop, receiving payments that might be made, and that the defendant should be liable for the balance to an amount not exceeding two hundred dollars? or does it indicate merely an intention to authorize a sale of goods to an amount not exceeding two hundred dollars in all, with the guaranty as security? The language of the guaranty is such that its meaning is not clear. It seems to us the more natural construction to decide that the defendant agrees to be holden and agrees to pay " for stock delivered to A. E. Coffin to the amount of two hundred dollars," rather than that he agrees to pay not exceeding two hundred dollars on any balance that may remain unpaid after the delivery to Coffin of stock to a larger amount. Certainly there are no words which plainly look to future deliveries to an unlimited amount. The circumstances were such as to be consistent with a purpose on the part of the parties to establish a general line of credit for future transactions for an indefinite period. But they are equally consistent with a purpose to buy goods at one time to the amount of two hundred dollars. In applying the writing to existing facts, the defendant cannot be charged with anything more than appears from the general relations of the parties of which he may be presumed to have had knowledge, namely, that the plaintiffs were dealers in building material and Coffin was a contractor and builder.

In cases of this kind the language of the instrument is not to be construed most strongly against the party who uses it. We are to find the meaning of the parties if possible from the language, and in doubtful cases, inasmuch as the promise is to pay the debt of another, the presumption is that a guaranty of a single transaction or of limited transactions was intended, rather than a continuing guaranty. *Cremer* v. *Higginson*, 1 Mason, 323, 336. *Morgan* v. *Boyer*, 39 Ohio St. 324. *Melville* v. *Hayden*, 3 B. & Ald. 593, 595. We are of opinion that the instrument is not a continuing guaranty. See *Cutler* v. *Ballou*, 136 Mass. 337; *Boston & Sandwich Glass Co.* v. *Moore*, 119 Mass. 435; *White* v. *Reed*, 15 Conn. 457.                    *Exceptions sustained.*