CALLENDER, McAUSLAN AND TROUP COMPANY *vs.* JOHN FLINT.

Worcester.    October 6, 1904. — November 29, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Conflict of Laws. Evidence,* Presumptions and burden of proof, Proof of foreign law, Extrinsic affecting writings. *Guaranty.*

A contract to guarantee the payment for goods sold to a certain person up to a certain amount by a dealer whose place of business is in another State, takes effect only when accepted by the dealer, and is to be construed by the law of the State where it is accepted.

In the absence of evidence as to the common law of another State it is presumed to be the same as that of this Commonwealth.

Where the language of a guaranty in writing is open to more than one construction, evidence of the circumstances under which it was given and of preliminary correspondence may be resorted to, to determine the intent of the parties.

In an action on a guaranty in writing, it appeared, that the plaintiff, a wholesale dealer, at the request of S., a retail dealer in the same kind of goods, wrote to the defendant asking whether he would be responsible for the amount of a sale of goods to S., and that a correspondence ensued in which the defendant finally wrote as follows: "After talking with S. I have decided to help him in purchasing goods of you, he says, he can buy of you on sixty days. If so, I will guarantee the payment of goods he may buy of you, not to exceed $300, on terms as above." *Held,* that, considering the circumstances under which it was given and in the light of the correspondence, this was not a continuing guaranty, but was confined to the first sale of goods by the plaintiff to S. or to the first sales amounting to $300.

CONTRACT on a guaranty in writing, by which it was alleged that the defendant agreed to guarantee the payment on demand after sixty days of all sums of money due to the plaintiff from one Joseph Sherin for goods purchased of the plaintiff up to the amount of $300. Writ dated August 20, 1903.

The answer, among other things, alleged that the defendant's guarantee of the account of Joseph Sherin with the plaintiff was for sixty days only from the date of the purchasing of his first bill of goods sold by reason of the defendant's guarantee and after the date thereof and that the plaintiff was paid in full for all goods purchased by Joseph Sherin from the plaintiff to the amount of $300 within sixty days of such sale after the date of the defendant's written guaranty.

In the Superior Court the case was heard by *Gaskill*, J., without a jury, upon an agreed statement of facts. The judge found and gave judgment for the defendant; and the plaintiff appealed.

By the agreed statement of facts, it appeared, that in January, 1902, Joseph Sherin was conducting business at Webster, and that the plaintiff, a corporation, was conducting business in Providence in the State of Rhode Island, and was a wholesale dealer in the same kind of goods in which Sherin was a retail dealer; that Sherin went to the plaintiff in the latter part of January, 1902, and desired to open an account with it and to purchase goods on credit, when the following correspondence ensued:

" Providence, R. I., Jan. 24, 1902.

" Mr. John Flint, Webster, Mass.

" Dear Sir: Mr. Joseph Sherin of your town wishing to buy a few goods of us to-day informs us that you have told him that you would guarantee any purchase he might make from us.

"If this is correct, please send such guarantee, and greatly oblige,

" Yours truly, Callender, McAuslan & Troup Company."

" Jany. 25th, 1902.

" Callender, McAuslan & Troup Co.,

" Gents: Your letter of the 24th received. Will say I am very much surprised that you should ask me to guarantee any purchases that Mr. J. Sherin might make from you, *not* because I do not think him good, for I think him a good, straight, honest man, and one that will pay all of his bills. I have known him for several years and have yet to learn of anyone having lost by him in any way. Mr. Sherin has been in my store for four

months, has paid his rent prompt. The store he occupied before moving in to my store for one year rent was paid promptly. If I was selling goods I should not hesitate in giving him Cr. for I consider him an honest and fair dealing man. But at my time of life I do not propose to be responsible for goods bought by any one.

" Yours truly, John Flint."

" Providence, R. I., Jan. 27th, 1902.
" Mr. John Flint, Webster, Mass.

" Dear Sir, — Yours of 25th inst. at hand regarding the guarantee we ask for on Mr. Sherin's purchases in which you say you are very much surprised we should ask for such a guarantee. It is no wonder you were surprised at this request unless you had made a previous agreement with Mr. Sherin; this we understood him to say you had done, so for this reason we wrote for the request, he distinctly telling us to hold the goods which he might select until we received the guarantee. We beg pardon for any trouble we have caused you and remain,

" Yours very truly, Callender, McAuslan & Troup Company."

" Webster, Mass., January 31st, 1902.
" Callender, McAuslan & Troup Co.,

" Gents: after talking with Mr. Joseph Sherin I have decided to help him in purchasing goods of you, he says, he can buy of you on (60) sixty days. If so, I will guarantee the payment of goods he may buy of you, *not* to exceed three hundred dollars ($300), on terms as above. I think his prospects are good, and he will come out all right.

" Yours truly, John Flint."
" (N. B.) Please sell him low so he can make a dollar.
" Received Feb. 1, '02 A. M. eight o'clock."

It further appeared, that at the time of bringing this action there was due from Sherin to the plaintiff the sum of $333.29, and that the goods for which this sum was due were sold and delivered by the plaintiff to Sherin more than sixty days before the bringing of the action. It was agreed, that no part of this sum could be recovered unless the guaranty was a continuing

one ; that the first bill for goods was about $197, that goods to a much larger amount than $300 in the aggregate were bought by Sherin from the plaintiff after the giving of the guaranty, and that Sherin had paid the plaintiff as much as $300 for goods.

The case was submitted on briefs at the sitting of the court in October, 1904, and afterwards was submitted on briefs to all the justices.

*C. H. Goodell*, for the plaintiff.

*C. Haggerty*, for the defendant.

BRALEY, J.   As the contract of guaranty did not become effectual until accepted by the plaintiff, whose place of business was in another jurisdiction, its argument, that the construction of the agreement depends on the law of the place of acceptance may be conceded.  *Nashua Savings Bank* v. *Sayles*, 184 Mass. 520, 522.

But judicial notice cannot be taken of the laws of another State, which must be proved, and determined like other facts, and no evidence of their provisions can be received for the first time at the argument of a case in this court.   And as the agreed statement of facts contains no reference to the common law of Rhode Island the presumption follows that in the case presented it is the same as our own.  *Hazen* v. *Mathews*, 184 Mass. 388, 391.

The question to be decided is whether the contract was a continuing guaranty.

If there is no ambiguity in the agreement itself, the answer must be found from the terms of the instrument alone, but as the language used is open to more than one construction, resort may be had to extrinsic evidence to determine the intent of the parties.  *Bent* v. *Hartshorn*, 1 Met. 24.  *Sullivan* v. *Arcand*, 165 Mass. 364.

It appears that Joseph Sherin, the debtor, desiring to buy goods on credit from the plaintiff, and it not being willing to open an account with him, at his suggestion the plaintiff wrote a letter to the defendant asking him if he would become responsible for the amount of the sale.

There is no evidence that before this time the defendant had been requested by Sherin to become a guarantor, and the letter must be considered as the first intimation or request made to him that he should so act.

The language of the letter thus becomes important as expressing the nature of the pending transaction with Sherin which the defendant was asked to guarantee. It shows that the purchase intended is limited to goods bought on the day of its date, and though the phrase " you would guarantee any purchase he might make from us " is used, it is a part of the sentence which states the proposed sale and refers to it. And when the defendant had answered declining to become responsible, the reply of the plaintiff in explanation of its request, and referring to the contract of the debtor, contained this significant language, " he distinctly telling us to hold the goods which he might select until we received the guarantee."

If it was the purpose of the plaintiff to give Sherin a general credit for the sale of goods in the future for the payment of which the defendant should be bound, its letter contained no such statement, though it was written at a time when the proposed course of business between it and the debtor had been considered, and credit had been asked for by him.

Obviously, when the guaranty was given, the defendant well might have understood that the debtor had contracted for specific goods on credit, and the plaintiff was unwilling to complete the sale by delivery until security for their payment had been given ; and with this understanding he agreed to be liable for this transaction, but did not intend to become bound for succeeding purchases.

While it might be said that the plaintiff and Sherin really intended that the defendant should become responsible for a course of continuous dealing, and the language of the defendant's engagement might be found open to such a construction, yet looking at the conditions under which it was given, it is more consistent with a construction that all the defendant intended was to aid him in a single purchase of goods from the plaintiff, and as this was followed by payment the guaranty was fully satisfied. See *Boston & Sandwich Glass Co.* v. *Moore*, 119 Mass. 435 ; *Cutler* v. *Ballou*, 136 Mass. 337 ; *Sherman* v. *Mulloy*, 174 Mass. 41, 43.

This was the finding of the Superior Court, and as no error of law appears the judgment must be affirmed.

*So ordered.*