L. LITTLEJOHN AND COMPANY, INC. *vs.* HERBERT L. HANDY.

Hampden.    September 20, 1923. — October 9, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, PIERCE, & CARROLL, JJ.

*Guaranty.    Contract,* Construction.

The meaning of a contract of guaranty is to be ascertained from the words used, construed according to the ordinary rules for the interpretation of written instruments and read in connection with the subject matter, the well understood usages of business and all the relations of the parties to the transaction.

A rubber broker on March 26, 1919, wrote to one, who was the president, treasurer, a director and the owner of a large number of shares of stock of a corporation manufacturing rubber goods as well as the owner of bonds issued by it, a letter stating that a representative of the corporation had applied to him "for a small shipment of rubber to the" corporation, and "I am told you are Treasurer of this Company, and would appreciate a line from you as to their ability to meet their bills promptly," the reply to which was, "Answering yours of the 26th, . . . I wish to advise that if you will furnish this Company with anything that they want and send the bill in my care that you will be taken care of. Trusting this is the information you desire." Thereafter, for several months, rubber in quantities was sold through the broker to the corporation and once by the broker on his personal account, and was paid for. On December 22, 1919, a rubber merchant, who in May had been told of the treasurer's letter by the broker and had made several sales to the corporation in the meantime, accepted two orders placed through the broker for fourteen and twenty-eight tons of rubber respectively. After part of one order had been shipped, shipments were stopped because the corporation was in arrears in payments. The treasurer in June, 1920, after repeated demands upon the company and an interview with him as treasurer, gave his personal checks covering arrearages for such rubber as had been shipped, and stated that he had nothing to say as to any further rubber for the corporation, and he then wrote the merchant, stating that from that date he should no longer guarantee payments or be responsible for shipments to the corporation. Thereafter the treasurer was shown the alleged guaranty, which had been signed by him in his absence, and which, after inquiry of his secretary, he acknowledged he may have dictated and left for his secretary to sign, and demand was made upon him for damages due to the failure of the corporation to take and pay for the balance of the rubber. In an action against him as guarantor, it was *held,* that

(1) Assuming, without deciding, that the words in the alleged guaranty, "you will be taken care of," were the equivalent of a guaranty, it *was doubtful* whether the letter to the rubber broker alone rightly could be interpreted as extending the promise of the defendant to any one other than the broker. Distinguishing *Rome* v. *Gaunt, ante,* 82;

(2) The natural import of the letter relied on as a guaranty was that it referred to the one proposed purchase then pending about which the rubber broker had inquired, and that it was not a general and unlimited guaranty;

(3) The defendant's payments by personal checks, a request by him for a statement of account and his acknowledgment that the letter, although not signed by him, was written and sent by his authority, did not in their setting in the record appear to have been founded upon the guaranty part of the letter; and there was not in the record any evidence of interpretation of the alleged contract of guaranty by conduct of the defendant in a way inconsistent with his defence to the action.

CONTRACT, with a declaration in two counts, upon an alleged contract of guaranty by the defendant of two contracts by the United States Leatheroid Company made on December 22, 1919, to purchase from the plaintiff fourteen tons and twenty-eight tons of rubber, respectively. Writ dated November 29, 1920.

In the Superior Court, the action was tried before *Lummus,* J. Besides the evidence described in the opinion, there was evidence of the following facts:

After the plaintiff's attention had been called to the alleged contract of guaranty by the commission agent, Odell, as stated in the opinion, several orders of the United States Leatheroid Company were accepted by the plaintiff previous to those of December 22, 1919, and a balance was owing to the plaintiff by the Leatheroid Company on that date. On January 20, 1920, the defendant as treasurer of the Leatheroid Company wrote to the plaintiff for an " itemized list of the business " done by that plaintiff with that company up to February 1. On February 17, 1920, the plaintiff delivered sixteen thousand pounds of rubber on the contract for fourteen tons and then ceased deliveries because payments by the Leatheroid Company on the account were in arrears. After repeated demands by the plaintiff upon the Leatheroid Company, the defendant told a representative of the plaintiff in an interview on June 24, 1920, that he would pay the amount due and owing for the rubber, but decided that he would have to do it in the form of two checks, one dated June 24, for three thousand odd dollars, and another, post dated about July 3, for the balance, the sum of $4,000. These two amounts balanced the amount then

owing on the open account. Being reminded that there was some other rubber due and owing to the Leatheroid Company on these contracts, the defendant replied that he had nothing to say about any further rubber, as he had paid out enough money for that company. He then wrote to the plaintiff a letter reading as follows: " I hereby beg to notify you that from this date on I shall no longer guarantee payments or be responsible for any goods shipped to the U. S. Leatheroid Co. or any other Company."

No further rubber was shipped to the Leatheroid Company, and in this action the plaintiff sought damages due to a loss sustained by it by reason of the refusal of the Leatheroid Company to fulfill its contract to receive and pay for the undelivered rubber, the price of rubber having fallen after December 22, 1919.

On July 28, the same representative saw the defendant and showed him the alleged letter of guaranty described in the opinion, which was not signed by the defendant personally. The defendant read the paper, got up out of his chair, and remarked, " I must look into this." The witness said " Mr. Handy, you have read that paper, and you know what it says. I wish you would hand it back to me." The defendant kept on walking to the door, and there spoke with his young lady secretary. He showed the letter to her. The witness did not hear her reply, but only saw her nod her head. The defendant came back into the office. The witness said, " Mr. Handy, don't you think that we can come to some settlement that is an amicable settlement, especially in view of this letter which I have shown you? " The witness said, " It is true that your signature doesn't seem to be there, but did not you dictate this letter or authorize it to be written? " The defendant then, after some discussion, stated that he supposed it was one of those times when he was busy, and had to leave the office in the evening, and before he had done so it was his custom to dictate letters to his secretary, which she would sign. The witness then said, " Mr. Handy, I suppose that happened in this particular case? " The defendant said, " Oh, I suppose so." The plaintiff's representative talked to the

defendant about making an amicable settlement, and the defendant said, " Taylor, I told you before, when I met you first, that I was through; and of course I have no objections to your going over to Reading if you want to go, but I tell you now that if you ship any more rubber to the Leatheroid Company, you do so at your own risk, as they are insolvent and can't pay for it, and I won't pay for any more rubber. If this concern should ever get into financial difficulties the creditors would get nothing, practically.  The bondholders would take over all the assets, in all probability."  The defendant stated that he was a bondholder of the Leatheroid Company and that he was largely interested as a creditor as well as an officer, a large stockholder and bondholder.

Other material evidence is described in the opinion.

At the close of the plaintiff's evidence, on motion by the defendant, a verdict was ordered for the defendant.  The plaintiff alleged exceptions.

*G. C. Richards,* (*C. H. Beckwith* with him,) for the plaintiff.

*J. B. Ely,* for the defendant.

Rugg, C.J.   This is an action of contract to recover, upon a written guaranty made by the defendant, damages arising from breach of two contracts for the purchase of rubber from the plaintiff by the United States Leatheroid Company. The contracts were made through one Odell, a rubber broker. Early in 1919 one McTernan came to Odell's office several times and had conversations with him about rubber.  As a result Odell wrote, under a letterhead " James E. Odell, Broker in India Rubber," to the defendant on March 26, 1919, in these words: " Mr. Andrew McTernan, whom I have known for a number of years, has applied to me for a small shipment of rubber to the U. S. Leatheroid Co.   I am told you are Treasurer of this Company, and would appreciate a line from you as to their ability to meet their bills promptly."   Reply was sent to Odell under date of March 27, 1919, of this tenor: " Answering yours of the 26th, relative to Mr. McTernan's purchasing rubber from you for the U. S. Leatheroid Co., I wish to advise that if you will furnish this Company with anything that they want and send the bill in my care that you will be taken care of.

Trusting this is the information you desire." The defendant was treasurer of the Leatheroid Company. He resided and conducted an independent personal business in his own name in Springfield. The plant and office of the Leatheroid Company were in Reading. The business of the Leatheroid Company was under the active control of McTernan, general manager until the fall of 1919, and thereafter " superintendent of the rubber end," and of one Everett, general manager in and after the fall of 1919. The two contracts for the purchase of rubber were made by one or the other or both of these men. The defendant went to the plant of the Leatheroid Company only occasionally.

Odell kept the defendant's letter of March 27, 1919, until after the contracts were made for breach of which this action is brought. On March 27, 1919, Odell sold the Leatheroid Company rubber, one case for account of the Meade Rubber Company and one case on his own account. On April 23, 1919, he sold to it rubber for account of another rubber company. The first transaction of the plaintiff with the Leatheroid Company was on May 1, 1919, and the plaintiff then was told by Odell of the nature of the defendant's letter of March 27, 1919. After numerous intervening transactions, the contracts here in issue were made on December 22, 1919.

The meaning of a contract of guaranty is to be ascertained from the words used, construed according to the ordinary rules for the interpretation of written instruments and read in connection with the subject matter, the well understood usages of business and all the relations of the parties to the transaction. The ordinary rule for the construction of a written instrument, whether it be of guaranty or of any other character, is to give it that effect most in accord with the intention of the parties as disclosed by the words used when defined according to the common and approved usage of the language, without stretching or constricting their natural signification. *Boston Hat Manufactory* v. *Messinger*, 2 Pick. 223, 235. *Mussey* v. *Rayner*, 22 Pick. 223, 228. *Eustace* v. *Dickey*, 240 Mass. 55, 72, 73, and cases there collected. *Zeo* v. *Loomis*, *ante*, 366.

The defendant's letter of March 27, 1919, was written in reply to an inquiry from Odell as to " a small shipment of rubber to the U. S. Leatheroid Co." The defendant's reply stated in specific terms that it was in answer to that inquiry, that it related to the proposed purchase of rubber therein described and that, if the rubber was furnished and " the bill " sent to the care of the writer, " you will be taken care of." It is assumed in favor of the plaintiff, without so deciding, that the six words last quoted were the equivalent of a guaranty.

It is doubtful whether such a letter directed to Odell alone rightly could be interpreted as extending the promise of the defendant to any one else. Although a broker, Odell himself sold one lot of rubber directly to the Leatheroid Company and therefore was in a position personally to take advantage of the benefit of the guaranty. Hence the letter could be given effect when applied to him to whom alone it was addressed. *Carkin* v. *Savory*, 14 Gray, 528. The circumstances and the words of the defendant's letter are quite different from those under consideration in *Rome* v. *Gaunt, ante*, 82, where the guaranty was obviously intended to be general and shown to all those unnamed persons of a class who might desire to take advantage of it.

Without resting the decision upon this ground, there is another and decisive consideration. The natural import of the letter of the defendant is that it refers to the particular transaction then pending about which Odell had inquired. Among business men an answer commonly is responsive to the question. A reply does not generally altogether transcend the limits of the inquiry. The normal inference to be drawn from the two letters read together is that they relate to one proposed purchase. The letter of the defendant refers to " the bill." That phrase usually signifies one rather than several, especially when found in a contract of guaranty. *Creighton* v. *Elwell*, 243 Mass. 580. There was in the letter of Odell no request or even invitation to the defendant to make a general and continuing guaranty of all purchases of rubber which the Leatheroid Company might make of anybody at any time in the future. There

appears to have been no occasion for the defendant to volunteer an extended personal liability for the obligations of the company. The words in the defendant's letter of March 27, 1919, the circumstances in which they were used and the relation between Odell and the defendant, all lead to the conclusion that the letter was not a general and unlimited guaranty but was confined to the matter then under consideration.

The case at bar is governed by the principle of numerous decisions. *Boston & Sandwich Glass Co.* v. *Moore,* 119 Mass. 435. *Cutler* v. *Ballou,* 136 Mass. 337. *Sherman* v. *Mulloy,* 174 Mass. 41. *Callender, McAuslan & Troup Co.* v. *Flint,* 187 Mass. 104, 108. *Tilton* v. *Whittemore,* 202 Mass. 39. *John S. Brittain Dry Goods Co.* v. *Yearout,* 59 Kans. 684. *Knowlton* v. *Hersey,* 76 Maine, 345. *Schwartz* v. *Hyman,* 107 N. Y. 562. *Birdsal* v. *Heacock,* 32 Ohio St. 177. *Anderson* v. *Blakely,* 2 Watts & Serg. 237. *Blyth* v. *Pinkerton National Detective Agency,* 10 Wyo. 135, 151, 155. It is distinguishable from *Cumberland Glass Manuf. Co.* v. *Wheaton,* 208 Mass. 425, *Dover Stamping Co.* v. *Noyes,* 151 Mass. 342, *Celluloid Co.* v. *Haines,* 176 Mass. 415, and other cases upon which the plaintiff relies.

There is in the record no evidence of interpretation of the letter of March 27, 1919, by conduct of the defendant. His payment by two personal checks to the plaintiff on account, his request for statement of account and his acknowledgment that the letter, although not signed by him, was written and sent by his authority, do not in their setting in the record appear to have been founded upon the guaranty part of the letter. The rule of cases like *Gallagher* v. *Murphy,* 221 Mass. 363, 365, and *Crowe* v. *Bixby,* 237 Mass. 249, 253, to the effect that construction of a doubtful contract by the parties is entitled to weight in determining its meaning has no pertinency to the facts here disclosed.

                              *Exceptions overruled.*