THE AGRICULTURAL NATIONAL BANK OF PITTSFIELD, executor, *vs.* MARY A. BRENNAN.

Berkshire. January 9, 1936. — September 9, 1936.

Present: RUGG, C.J., FIELD, LUMMUS, & QUA, JJ.

*Guaranty. Contract,* Construction. *Bills and Notes,* Renewal, Note as payment. *Payment.*

A finding by a judge, that a guaranty in writing of payment of "note or notes" of a customer of a bank "amounting to" a certain sum "waiving notice and demand" was intended by the guarantor as a continuing guaranty of an indebtedness to that amount evidenced by a note or notes, not of any particular note or notes, was warranted by the words of the instrument and evidence of the relations of the parties to the transaction, although there were not in existence at the time of its execution or later notes of the customer of the precise amount named in the instrument and it did not contain a statement of its duration.

A finding, that a note, guaranteed and secured by a pledge of collateral, was not discharged by the acceptance of renewal notes and surrender of old notes from time to time both before and after the death of the guarantor without a release of the collateral, was warranted, and the guarantor was not released by the renewals.

PETITION, filed in the Probate Court for the county of Berkshire on February 4, 1935, for the allowance of the first account of the executor of the will of Giuseppe Faccioli.

The petition was heard by *Robinson,* J., and was allowed. Mary A. Brennan appealed.

*F. M. Myers,* for the respondent.

*J. M. Rosenthal,* for the petitioner.

RUGG, C.J. This is an appeal from the decree of a probate court allowing the first account of The Agricultural National Bank of Pittsfield as executor of the will of Giuseppe Faccioli. They are hereafter called respectively the accountant and the testator. The only question argued by the appellant is whether there was error in the allowance of a payment made by the accountant to itself of $2,783.79 on a note on which the accountant asserted the right to hold

the testator's estate liable to it under a written instrument of guaranty.

The trial judge filed a report of material facts (G. L. [Ter. Ed.] c. 215, § 11) in substance as follows: The instrument of guaranty was dated September 21, 1931, was addressed to the accountant, was signed and sealed by the testator and was in its body of the tenor following: "For value received, waiving notice and demand, I guarantee the payment of note or notes of A. B. Hendricks, Jr., amounting to Sixty Six Hundred Ninety Nine ($6699.00) dollars, secured by the following collateral —

$250.00 G. E. Emp. Sec. Corp. Bonds
34 sh Electric Bond & Share Common
140 " General Electric Company Common
15 " General Electric Company Special
6 " American Tel. & Tel. Company

It is understood that a similar guarantee is given by Mr. Chesney for notes of Mr. Hendricks of equal amount and secured by collateral equal in amount and kind." On the same day one C. C. Chesney signed, sealed and delivered to the accountant an instrument of similar tenor, except that one item of collateral stated to be security for the Hendricks "note or notes" was less by one share of stock than in the instrument signed by the testator. Nothing turns on this difference. On that day the total collateral held by the accountant as security for the Hendricks notes consisted of the aggregate of the amounts of collateral mentioned in both instruments of guaranty. On that date the indebtedness of A. B. Hendricks, Jr., to the accountant amounted to $13,398.83, shown by two notes, one for $7,814.50 maturing September 22, 1931, and another for $5,584.33 maturing October 27, 1931. These notes were renewed from time to time. The testator died on January 13, 1934. About a month before that date the two notes were incorporated into one for $12,895, which fell due on February 1, 1934. That note was renewed from time to time in that amount until December 1, 1934. On December 31, 1934, two notes were taken, each in the sum of

$6,447.50. Subsequently the accountant sold certain collateral of Hendricks held by it, applied the proceeds to the payment of his indebtedness to it on the notes, and charged the estate of the testator with the deficit. The General Electric bonds mentioned in the instrument of guaranty as collateral were called on May 9, 1934. The accountant as executor took a note from Hendricks to cover the amount of this deficit. The guaranty signed by the testator was intended as a continuing guaranty and the accountant, in waiting so long as it did after the death of the testator before selling the securities, acted within a reasonable time and there is no evidence that the delay occasioned any loss to the estate. The accountant held no note or notes of Hendricks on September 21, 1931, or at any other time amounting to $6,699. The taking of renewal notes by the accountant, so far as it was a question of fact, did not operate as a payment of the obligation of Hendricks as it existed on September 21, 1931. As each renewal note was given by Hendricks, the old note was surrendered to him and at the time of the testator's death the only note held by the bank was the one maturing February 1, 1934.

The collateral thus sold by the accountant and the amounts received therefor are set forth in the findings, but as no argument has been directed to this point by the appellant it is not necessary to recite those findings or to deal with them. Apparently the entire remaining collateral attributable to the Hendricks indebtedness secured by the instrument of guaranty signed by the testator has been sold and credited. The contrary has not been argued.

The evidence has been reported in full. The findings of material facts made by the trial judge are set forth in the record. There is little if any conflict in the testimony. In these circumstances the findings will not be reversed unless plainly wrong or based on some error of law. *Bowles* v. *Comstock*, 286 Mass. 159, 167. *Fenton* v. *Malfas*, 286 Mass. 339, 341. *Ashley* v. *Collins*, 292 Mass. 67, 70. The liability of a guarantor is to be ascertained from the terms of the written instrument by which the obligation is expressed, construed according to the usual rules of interpretation in

the light of the subject matter, the well understood usages of business, the relations of the parties to each other and to the transaction, and all other material circumstances. *Zeo* v. *Loomis,* 246 Mass. 366, 368. *L. Littlejohn & Co. Inc.* v. *Handy,* 246 Mass. 370, 374. *Merrimac Chemical Co.* v. *Moore,* 279 Mass. 147. Where the language of the instrument is not clear beyond peradventure, an interpretation will commonly be adopted which will effectuate a reasonable and enforceable purpose to accomplish a practical and straightforward end. *Clark* v. *State Street Trust Co.* 270 Mass. 140, 152–153. *Talbot* v. *Rednalloh Co.* 283 Mass. 225, 230. *Kennedy Bros. Inc.* v. *Bird,* 287 Mass. 477, 483.

The material conditions attendant upon the execution of the guaranty as disclosed by the testimony were that the testator, Chesney and Hendricks were intimate friends; Hendricks owed to the accountant the two notes already described; the collateral securing them had fallen in value below banking requirements; the indebtedness was of long standing; payment was being pressed by the holder of the notes unless additional collateral was deposited; Chesney and the testator met and had conversation touching the situation and the guaranty was signed by each; one of the notes was falling due the next day and the other about five weeks later; as matter of common knowledge a financial depression was in existence. The conversation between the testator and Chesney touching the giving of the guaranties was excluded by the trial judge, but the fact that there was such conversation was competent. See *Sampson* v. *Sampson,* 223 Mass. 451. In fact, the amount mentioned in each instrument of guaranty was stated with exactness and was in substance one half of the total indebtedness of Hendricks to the accountant on the notes, and the collateral therein mentioned was in substance one half of each kind of security deposited as collateral for both notes. The notes guaranteed are not specified in detail in the writing. They are described as "note or notes." These words are generic rather than limited in scope. In these circumstances it is of no consequence that there were not in existence at that time or later notes or note of Hendricks of the precise amount mentioned

in the instrument of guaranty. It was an indebtedness of the specified amount manifested by a note or notes and not any particular note or notes which was guaranteed. Otherwise the instrument of guaranty would be meaningless or of no enforceable value, a result not permissible if any other appears practicable and reasonable. *Talbot* v. *Rednalloh Co.* 283 Mass. 225, 230. Am. Law Inst. Restatement: Contracts, § 236 (a).

The duration of the guaranty is not stated in the writing. It may be assumed in such circumstances that the guaranty was intended to be of genuine help to Hendricks and was to be operative for a reasonable time. The fair inference is that the instrument of guaranty was designed to continue more than one day; otherwise it would afford no substantial relief to Hendricks, because one note matured the day after the date of this instrument. The further inference might also be drawn that renewals of and changes of form in the existing short term notes were intended to be covered by that instrument. *Zeo* v. *Loomis*, 246 Mass. 366, 368. *Merrimac Chemical Co.* v. *Moore*, 279 Mass. 147. The finding that the instrument was intended by the testator as a continuing guaranty was warranted by its words and by the relations of the parties to the transaction. The instant case on this point is quite distinguishable, both in the language of the guaranty and in the attendant conditions, from *Sherman* v. *Mulloy*, 174 Mass. 41; *O'Brien* v. *Murphy*, 175 Mass. 253; *Keith* v. *Thomas*, 266 Mass. 566, and other decisions upon which the appellant relies.

The contention of the appellant that the instrument of guaranty was discharged by the surrender of the old notes to the maker when other notes were given in renewal or substitution cannot be supported. While in general the taking of a negotiable note for a preëxisting account or note is presumptively a discharge of the old debt and acceptance of the new note in place of it, that presumption does not arise if it appears that it will be for the benefit of the creditor that the old debt be kept alive. *Cotton* v. *Atlas National Bank*, 145 Mass. 43, 45. *Freedman* v. *Peoples National Bank of Marlborough*, 291 Mass. 168, 171. This subject has

recently been discussed at large where the guaranty of a deceased person was held not to be discharged. *Anderson v. Home National Bank of Brockton,* 290 Mass. 40. In view of these decisions, it is plain that the instrument of guaranty was enforceable against the estate of the testator notwithstanding renewals of notes after his death. The indebtedness was in existence long before his death. The finding is explicit that no loss was occasioned to his estate by any delay and that as matter of fact the taking of renewal notes did not operate as payment of the obligation of Hendricks as it existed on September 21, 1931. These findings are supported by evidence and must stand.

Cases like *Jordan* v. *Dobbins,* 122 Mass. 168, and *Hyland* v. *Habich,* 150 Mass. 112, where the attempt was made to hold the estate of the guarantor for indebtedness having initial existence after his death, are quite distinguishable. The case at bar is also distinguishable from *Maglione* v. *Penta,* 266 Mass. 413, where the guaranty was not a continuing one but confined to a specific instrument of indebtedness.

Nothing in the record requires a reversal of the finding as to the amount of the indebtedness due to the accountant from the estate.

No reversible error is disclosed.

*Decree affirmed.*