Louis Henry KERMOTT, Respondent,

v.

MONTGOMERY WARD & CO., Incorporated,
a foreign corporation, Appellant.

No. 7537.

Supreme Court of North Dakota.

Feb. 7, 1957.

Bosard & McCutcheon, Minot, for appellant.

Waldron & Kenner, Minot, for respondent.

BURKE, Judge.

In this action plaintiff asked for a declaratory judgment construing a lease and an agreement supplementary thereto relating to certain business property in the City of Minot. The lease was executed by the parties on December 12, 1945. By its terms it was made subject to a prior lease which would expire on May 31, 1947, and it was stipulated in the lease that the tenant's obligation to pay rent would not accrue until the landlord had delivered exclusive possession of the premises to the tenant. The lease is long and for the most part there is no dispute as to the meaning of its provisions. However, on March 3, 1947, before possession of the premises had been delivered to the tenant, the building thereon was destroyed by fire and a very serious controversy has arisen between the parties as to whether the lease, and an agreement supplementary thereto, made after the fire, required the tenant to build a new building on the premises. The plaintiff contends that the agreements require the building to be built forthwith. The defendant says that the agreements leave it to its option as to whether it will build or not, or that if the agreements obligate it to build, it is an obligation which may be performed at any time during the term of the lease which expires in 1963, but which may be extended by the defendant. It is this controversy which we are asked to resolve.

The original lease provides, in section 18 thereof, that the tenant will at all times, after the date that the rent provided for in section 2 commences to accrue, keep all improvements on the premises insured against loss or damage by fire or other risks. Section 19 of the lease provides that in the event the building on the leased premises, covered by the insurance provided for in section 18, after the tenant is required to carry insurance pursuant to the provisions of section 18, shall be destroyed by fire or other casualty, such building shall be restored by the tenant at its own expense. Section 19 also provides that the proceeds of the insurance referred to in section 18 shall be paid to and belong to the tenant and be used by it to the extent necessary in restoring the building. Section 28 of the lease provides that the tenant may erect a new building on the premises. Build-

ing under this section contemplates tearing down the old structure. It is an optional privilege granted to the tenant and it requires the landlord to pay $30,000 of the cost of building in the event the privilege is exercised.

Since the building was destroyed by fire prior to the delivery of possession to the tenant, its agreement, to insure and its agreement to restore the building after its destruction by fire, had not become effective for these agreements were not to take effect until rent had commenced to accrue. And since the privilege granted by section 28 was optional, there clearly was no obligation upon the tenant to rebuild the destroyed building before the supplemental agreement was executed.

At the time of the fire the building was insured in the plaintiff's name, and the proceeds of the insurance were collected by him. On April 14, 1947 the supplemental agreement between the parties was executed. Section 1 of this agreement reads as follows:

"The Landlord agrees to pay to the Tenant on or before June 1, 1947 the total amount of the insurance proceeds received by the Landlord because of the destruction of the improvements upon the demised premises after deducting therefrom an amount equal to the actual cost of the Landlord of razing the walls of the building still standing on the premises and clearing and leveling the ground. The amount of such insurance proceeds shall be applied by the Tenant toward the cost of a new building to be erected by the Tenant on the premises during the term of said lease in accordance with the provisions of Section 28 of said lease * * *."

Section 28 of the original lease was deleted and a new section 28 substituted. This new section provided in its first sentence:

"It is understood that the Tenant may during the term of this lease, pursuant to but without limitation of the privileges granted to it by Section 14, erect a new building upon the demised premises * * *."

The rest of section 28 is practically identical with the provisions of the original section, except that the landlord's contribution to the cost of building is raised from $30,000 to $50,000, in addition to the insurance proceeds.

The landlord paid to the tenant the proceeds of the insurance in the sum of $16,516.76 as required by section 1 of the supplemental agreement but the tenant has refused to build a new building upon the leased premises although it has paid the monthly rent required by the lease.

The tenant now claims that the obvious purpose of the supplemental agreement was that the insurance proceeds should stand in place of the building and that such agreement created no obligation to build a building on the premises. We are clear that such contentions are contrary to the express language of the agreement. The agreement specifically states:

"The amount of such insurance proceeds shall be applied by the Tenant toward the cost of a new building to be erected by the Tenant on the premises. * * *"

This language leaves no doubt but that the proceeds of the insurance were paid by the plaintiff and received by the defendant for the sole purpose of helping to defray the cost of a new building which was to be built by the defendant on the premises. The only uncertainty about the contract relates to the time within which the defendant might perform its obligation to rebuild. The contract states, "building to be erected on the premises by the Tenant during the term of said lease." The tenant asserts, that if it has an obligation to build, that, under the above contract provision, performance of

the obligation may be delayed indefinitely as long as the lease is in force. Thus, under the tenant's construction of the lease, building could be delayed indefinitely. If we accept such a construction we must say that the parties to the lease intended that the landlord should pay over to the tenant more than $16,000 for the express purpose of building a structure on the leased premises and that the tenant might hold that money for many years without devoting the payment to the agreed purpose; that in the meantime the landlord should keep available $50,000, his share of the cost of the new building which he was required under the provisions of section 28 of the lease to make available to the tenant at any time on sixty days notice; and that the tenant might delay building so that the time of completion of the structure would coincide with the expiration of the lease.

 It is a general rule that contracts will be given a reasonable construction, where that is possible rather than an unreasonable one. 17 C.J.S., Contracts, § 319, p. 739. What we consider an excellent statement of the rule is contained in Agricultural Nat. Bank of Pittsfield v. Brennan, 295 Mass. 325, 3 N.E.2d 769, 771, wherein it is said:

"Where the language * * * is not clear beyond peradventure, an interpretation will commonly be adopted which will effectuate a reasonable and enforceable purpose to accomplish a practical and straightforward end."

We think that the construction contended for by the defendant is unreasonable and that the language of the lease is not so clear that we are required to adopt that construction. The original lease and the supplemental agreement must be construed together. Section 9-0706 NDRC 1943, provides:

"The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable.

Each clause is to help interpret the others."

The original lease made provision, in sections 18 and 19 thereof, for reconstruction of the building on the premises in case of its destruction by fire. These provisions clearly contemplated rebuilding within a reasonable time. By misadventure the building was destroyed before possession had been delivered to the tenant and therefore before sections 18 and 19 of the lease had become effective. The parties thus found themselves in a position wherein the only contract provisions for rebuilding were the optional provisions contained in section 28 of the lease. These provisions required only a $30,000 contribution by the landlord toward the cost of the building. We think it a reasonable construction of both instruments to say that the parties intended that the supplemental agreement should fill the void left in the lease by the fact that sections 18 and 19 thereof had not gone into effect and that the obligation to rebuild under the supplemental agreement was the same as that contained in those sections. Certainly, the landlord would not have agreed to turn insurance proceeds in a sum in excess of $16,000 over to the tenant for the purpose of rebuilding and at the same time increase his obligation for his share of the cost from $30,000 to $50,000 if the rebuilding was to remain optional or could be indefinitely postponed by the tenant.

██ In view of all of the circumstances and the language used, we think the entire contract contemplated and the parties intended that the tenant's obligation to reconstruct a building on the leased premises was to be performed in a reasonable time after the payment of the insurance proceeds by the landlord to the tenant.

 The trial court in this case came to the same conclusion. It also found that a reasonable time within which to construct the new building had elapsed and

decreed specific performance of contract by ordering the defendant to construct a new building on the premises within one year from the date of the judgment. We are agreed that the seven years which elapsed between the signing of the supplemental agreement and the commencement of this action exceeded the reasonable time within which defendant was obligated to perform. However, we think the latter part of the district court's judgment which decreed specific performance went beyond the scope of the pleadings which asked only for a declaratory judgment construing the lease.

The judgment is therefore modified by striking that part thereof which decrees specific performance, and as modified it is affirmed.

GRIMSON, C. J. and JOHNSON, SATHRE and MORRIS, JJ., concur.