THE MERCHANTS NATIONAL BANK *vs.* HARRY K. STONE.

Essex.    November 9, 1936. — December 28, 1936.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Guaranty. Contract*, Construction. *Surety. Words*, "At any one time outstanding."

An instrument under seal guaranteeing to a creditor "due fulfillment" of "all obligations" of the debtor "up to an aggregate amount of $10,000 at any one time outstanding, whether incurred prior to the signing of the" instrument or thereafter before the creditor received notice of "revocation" of the guaranty, was not limited to a particular obligation or set of obligations amounting to $10,000.

One, who in writing guaranteed the fulfillment of all obligations, direct
or indirect, of a debtor and expressly authorized the creditor to "take
or release security and . . . grant . . . indulgences," indirectly gave
the creditor the same authority as to security held by the creditor
for an account of the debtor's wife which the debtor had guaranteed
under an instrument containing the same provision as to release and
indulgence; and therefore, in an action by the creditor against the
guarantor of the husband's account to enforce liability for an amount
owed by the husband on his guaranty of the wife's account, the de-
fendant could not complain that the creditor had released security of
the wife without consideration.

Under the provisions of a guaranty in writing of all obligations of a debtor
to a creditor "at any one time outstanding" prior to a notice in writ-
ing to the creditor of "revocation" of the guaranty, the guarantor
had no right of revocation of an authority, given to the creditor in a
subsequent paragraph, to release security and grant indulgence to
the debtor, and therefore evidence, that a failure by the creditor to
disclose to the guarantor facts relating to release of securities that
might have led him to attempt to revoke such authority, was im-
material.

CONTRACT. Writ in the Superior Court dated December
5, 1934.

The action was heard without a jury by *Morton*, J., who
found for the plaintiff in the sum of $10,631.24. The defend-
ant alleged exceptions.

*H. W. Ogden*, (*J. S. Marsh* with him,) for the defendant.

*H. Horvitz*, for the plaintiff.

PIERCE, J. This is an action upon a written, sealed
guaranty, signed by the defendant. It is alleged in the
declaration that on November 12, 1930, one Mary G. Breslin
was indebted to the plaintiff on her negotiable note, dated
November 1, 1929, originally in the sum of $37,000; that
on November 12, 1930, one Charles S. Breslin, husband of
the said Mary G. Breslin, executed and delivered to the
plaintiff a guaranty, by the terms of which he undertook,
among other things, to guarantee due fulfilment to the
plaintiff of all obligations, direct or indirect, of the said
Mary G. Breslin to it, to an unlimited amount at any one
time outstanding, whether incurred prior to the signing of
the aforesaid guaranty or thereafter and before revocation
thereof; that on September 22, 1931, the defendant exe-
cuted and delivered to the plaintiff a guaranty by the terms

of which the defendant undertook, among other things, to guarantee due fulfilment to the plaintiff of all obligations, direct or indirect, of said Charles S. Breslin to the plaintiff, up to an aggregate amount of $10,000, at any one time outstanding, whether incurred prior to the signing of the afore-. said guaranty, or thereafter and before revocation thereof; that at the time of the execution of this guaranty there was due on Mary G. Breslin's note a balance of $19,500, not including interest; that there was due on her note on the date of the writ in the present action a balance of unpaid principal amounting to $13,415.68, together with interest amounting to $2,407.15; and that this constituted an obligation, "direct or indirect," of Charles S. Breslin, within the terms of the defendant's guaranty.

The answer of the defendant need not be fully quoted. In general it is alleged therein that the plaintiff used, transferred and otherwise dealt wrongly with the securities pledged with the Breslin loans; and that the action was prematurely brought because the plaintiff had not exhausted its remedies against the principal obligor or against the collateral securing the obligation. His requests for findings and rulings are to the effect that the plaintiff misrepresented to the defendant, prior to the execution of the guaranty in question, the nature and extent of Charles S. Breslin's guaranty of Mary G. Breslin's obligations; and that the defendant, by false representations concerning the item of collateral security held by the plaintiff, was induced, long after the guaranty had been executed, to refrain from revoking said guaranty.

The case was heard in the Superior Court by a judge without a jury. At the close of the evidence the judge denied the defendant's motion for a "general finding for the defendant," and saved the defendant's exception thereto. He found for the plaintiff in the amount declared upon, with interest from the date of the writ, and filed a statement of rulings and findings dealing, among other things, with the defendant's requests for rulings of law, to all of which the defendant duly saved his exceptions.

A statement of facts which the judge would have been warranted in finding and in drawing therefrom his ultimate

conclusion in favor of the plaintiff is as follows: On No-
vember 1, 1929, Mary G. Breslin executed and delivered to
the plaintiff her negotiable promissory note in the principal
amount of $37,000, secured by a deposit of the collateral
described in and set forth upon the face of the note. On
November 1, 1930, Charles S. Breslin, husband of Mary G.
Breslin, executed and delivered to the plaintiff his nego-
tiable promissory note in the principal amount of $24,100,
secured by a deposit of the collateral described and set
forth upon the face of his note. On November 12, 1930,
Charles S. Breslin executed and delivered to the plaintiff a
"Guaranty" under seal in the following terms:

"In consideration of one dollar and other valuable con-
siderations . . . the undersigned guarantee(s) due fulfill-
ment to said The Merchants National Bank, Salem, Mass.,
of all obligations, direct or indirect, of . . . Mary G.
Breslin . . . to said The Merchants National Bank,
Salem, Mass., up to an aggregate amount of . . . . un-
limited . . . . dollars at any one time outstanding, whether
incurred prior to the signing of this agreement or hereafter
incurred prior to the receipt by the said Bank of notice
in writing from the undersigned of the revocation of this
guaranty."*

"It is further agreed that the undersigned waive(s) any
demand for payment and notice of non-payment and that
without notice to the undersigned or without affecting the
liability hereunder, the said Bank may enforce its rights
against the principal obligor and/or may take or release
security and/or surrender documents, grant extensions,
renewals, and indulgences."

On November 12, 1930, there was due on the Mary G.
Breslin note $37,000. On November 13, 1930, this amount
was reduced to $25,000 by a payment of $12,000.

On September 22, 1931, on which date there was due to
the plaintiff $24,000 on the note of Charles S. Breslin, and
$19,500 on the note of Mary G. Breslin, one Josiah H.

---

* It is noted in the plaintiff's brief that no claim is made upon any obliga-
tion of Mrs. Breslin incurred after the execution of this guaranty, so that
the above provision with respect to revocation is not applicable.

Gifford, president of the plaintiff bank, had a conversation with Charles S. Breslin with the result that Gifford, in the presence of said Breslin, called the defendant on the telephone and said to him that Breslin had suggested that the defendant "would be willing to guarantee his [Breslin's] loan." The defendant asked Gifford how much was needed and Gifford replied that the bank should have a "guarantee of $10,000" and that Breslin thought that Stone (the defendant) would guarantee it. In response to the defendant's further question as to the status of the loan, Gifford replied: "Charlie Breslin's loan is $24,000 and the approximate value of his collateral is $28,000. Mrs. Breslin's loan which he guarantees is 19,500, and the approximate value now of her collateral, 17,000. Charlie will bring with him, if you say you will guarantee this, the details of these loans with the collateral listed and approximate quotations." The defendant stated that he would "be willing to do it" or "would protect Charlie to that amount." Following this telephone conversation, Breslin left the plaintiff bank, taking with him a form of guaranty that had been prepared for the defendant's signature and memoranda of the details of the loans referred to in the conversation above stated. The memoranda were introduced in evidence as Exhibits 5 and 6. The defendant testified that he made the notations on the memorandum (Exhibit 5): "Will carry if int. pd." and "Phone call says Mtge. $5000. 29,000 value." With reference to these, Gifford testified (and it must be taken to have been found by the judge) that, at the time of the telephone conversation with the defendant, there was no talk about the mortgage on the Breslin homestead; that the matter of the $5,000 mortgage did not come under consideration until approximately sixty days after the telephone call on September 22, 1931, and "nothing was ever said about a $5,000 value on such mortgage"; and that he did not then have the life insurance policy with respect to which he had made a notation on Exhibit 5, although the policy had been assigned and was in the "works." It was not received in fact by the bank until December 9, 1931. Gifford further testified that the conversation had on Sep-

tember 22, 1931, was the only conversation he ever had with the defendant, and there is nothing in the record to contradict his testimony. In contradiction of the defendant's answer, it is to be noted that it was clearly indicated in both memoranda (Exhibits 5 and 6) that Charles S. Breslin had guaranteed Mrs. Breslin's loan; consequently his "collateral excess if any would apply against any shortage on her account." Charles S. Breslin returned the guaranty to the bank before the close of banking hours on September 22, 1931, the same day it was signed by the defendant. In form it is in every respect like the one signed by Breslin, except that the defendant's liability was limited to $10,000.

On December 13, 1932, the plaintiff brought an action in the Superior Court against the defendant based upon his guaranty of Charles S. Breslin's direct indebtedness to the plaintiff on the $24,100 note, upon which there was then due $24,000. Charles S. Breslin died on June 25, 1933. By reason of the collection of two insurance policies on his life and the sale of other collateral, his note was paid in full, the final payment of principal and interest being on October 11, 1933, in the sum of $5,495.35. A balance of $3,549.32, then in the hands of the plaintiff, was credited to the Mary G. Breslin loan. That action was discontinued on December 4, 1934.

On December 5, 1934, the present action was brought against the defendant. In this action the plaintiff seeks to recover $10,000, with interest, from the defendant under his guaranty of all obligations, direct and indirect, of Charles S. Breslin to the plaintiff. After the finding in the Superior Court, the defendant purchased the remaining collateral held by the plaintiff for $12,000, which, when applied in reduction of the Mary G. Breslin indebtedness, left a balance of principal due on January 8, 1936, of $2,895.83, with interest paid to January 8, 1936. The plaintiff has stipulated that at the appropriate time and in the appropriate form due credit will be given to the defendant on account of this transaction.

At the trial the defendant sought to inquire into the handling of the collateral by the bank. The judge refused

to allow such inquiry, on the ground that the loan instruments and the two guaranties gave the bank the right to take and release collateral, and ruled that any examination along these lines was restricted to showing that money obtained from sales of securities was not applied to the outstanding debt. He also refused to allow the defendant to show releases of collateral by the bank to the principal debtor without consideration therefor. The defendant further sought to show that the plaintiff bank, by nondisclosure of facts, impaired his right to revoke the guaranty in so far as his right to revocation extended to the authorization given to the bank to release security. Evidence along this line was excluded.

On the facts the defendant contended in his brief (1) that the judge erred in his interpretation of the guaranty, which, properly construed, was a guaranty of only the first $10,000 worth of obligation owed by Charles S. Breslin to the plaintiff; (2) that the authorization to the bank to take and release security applied only to security on the Charles S. Breslin account, and not on the Mary G. Breslin account; (3) that in no event was the plaintiff given power to surrender collateral without consideration; (4) that the defendant should have been allowed to show that the plaintiff prevented him from revoking his authorization to the bank to take and release security; and (5) that a general denial, filed by the defendant in the former action between the same parties, upon the same guaranty, operated as a written revocation of said guaranty subsequent to January 21, 1933, the date of the filing of the answer in the aforesaid action.

Respecting the defendant's contention that his contract of guaranty, rightly interpreted, was to guarantee only $10,000 worth of obligations of Charles S. Breslin, which obligations were the first $10,000 worth of such obligations, and that more than $10,000 was paid to the plaintiff after the execution of the defendant's guaranty, the judge found and ruled, as stated in the defendant's brief, "that while the defendant's principal liability could not exceed $10,000 yet as long as any obligations whatsoever of Charles S.

Breslin to the plaintiff remained unpaid, the defendant must pay, — regardless of whether the said obligations totalled in the aggregate $10,000 or ten times $10,000, and regardless of the then value or previous disposition of the collateral in pledge." At the trial it was admitted that Charles S. Breslin did, after execution of the defendant's guaranty, pay to the plaintiff more than $10,000. Because of such payment, the defendant contends that he is not liable to the plaintiff in any amount. By the instrument of guaranty the defendant agreed to guarantee "all obligations, direct or indirect" of Charles S. Breslin to the plaintiff "up to an aggregate amount of . . . . Ten Thousand . . . . dollars at any one time outstanding, whether incurred prior to the signing of this agreement or hereafter incurred." The defendant's interpretation gives no effect to the words "at any one time outstanding." Contracts of guaranty, like all other contracts, require that every word should be given effect if possible. *Maksymiuk* v. *Puceta*, 279 Mass. 346, 353. The words "at any one time outstanding" indicate or contemplate a succession of $10,000 obligations, which might, under the terms of the guaranty, be outstanding and yet be covered by the guaranty. Compare *Sturges* v. *Robbins*, 7 Mass. 301, 304. *Bent* v. *Hartshorn*, 1 Met. 24, 25, 26. If, in accord with the defendant's contention, it be assumed that only a single set of obligations was guaranteed, it does not appear from the language of the instrument that any particular $10,000 worth of obligations was guaranteed. When the defendant signed the guaranty the outstanding obligations of Charles S. Breslin exceeded $10,000. It is difficult to see how the defendant's guaranty applied to the first $10,000 obligation of Breslin rather than to the last. The evidence warranted a finding that the obligations of Charles S. Breslin to the plaintiff in excess of $10,000 were in existence between the signing of the guaranty and the date of the writ; and there is no evidence that any instructions directing the application of the payments in satisfaction of the defendant's obligations were given to the plaintiff by Breslin. In these circumstances the plaintiff had a right to apply the payments as it saw

fit to obligations not covered by the defendant's guaranty. *Brewer* v. *Knapp*, 1 Pick. 332, 337. *Upham* v. *Lefavour*, 11 Met. 174, 184. *William Filene's Sons Co.* v. *Lothrop*, 243 Mass. 214, 217. It follows that the defendant's contention that he had guaranteed a particular set of obligations of Charles S. Breslin, and had been discharged, cannot be sustained.

The second question presented by the defendant is concerned with the agreement as to waiver of the right of the defendant to inquire into releases of collateral held by the plaintiff. The defendant contends that he gave no authorization to the plaintiff to deal with collateral on the Mary G. Breslin account, and that the plaintiff had no authority to release any security without consideration. As to the first contention it is to be noted that Mary G. Breslin had authorized the plaintiff to deal with securities in her account. Charles S. Breslin guaranteed the obligations of Mary G. Breslin, and also in his guaranty expressly authorized the plaintiff to take and release securities. The defendant, in turn, guaranteed the obligations of Charles S. Breslin, and expressly authorized the plaintiff to take and release securities. Even if the defendant did not directly and expressly authorize the plaintiff to release securities of Mary G. Breslin, he did indirectly give such authorization. When one guarantees the contract of another, the guarantor is bound by the terms of the contract guaranteed. His rights rise no higher than those of the principal obligor, and his obligations are coextensive with those of the principal obligor. *Roth* v. *Adams*, 185 Mass. 341, 345. *Carr* v. *Leahy*, 217 Mass. 438, 441. *Spring* v. *Leahy*, 254 Mass. 614, 616. *Charlestown Five Cents Savings Bank* v. *Zeff*, 275 Mass. 408, 411, 412. *Manufacturers' Finance Co.* v. *Rockwell*, 278 Mass. 502, 506. It follows that Charles S. Breslin's guaranty of Mary G. Breslin's obligations and the defendant's guaranty of Charles S. Breslin's obligations were subject to the terms of these obligations. Ordinarily the creditor owes a duty to the guarantor not to impair any right which the guarantor may have by subrogation upon satisfying the obligation. *Welch* v. *Walsh*, 177 Mass.

555, 558. But an agreement by the guarantor allowing the creditor to release security is valid and binding on the guarantor, and prevents the latter from taking advantage of the release as a defence to the enforcement of the guaranty. *Paddock & Fowler Co.* v. *Simmons*, 186 Mass. 152, 154. *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 594, 595.

The final defence of the defendant is that the plaintiff, by nondisclosure of material facts, prevented the defendant from revoking his authorization to the plaintiff to release security. The underlying question here is, Did the defendant have a right of revocation? The right of revocation is limited to the guaranty applicable to obligations incurred after the receipt by the plaintiff of notice, in writing, of the revocation of the guaranty. The agreement as to waiver of any demand for payment, of notice of nonpayment, and the authorization as to release of collateral, are contained in a separate paragraph and no right of revocation is there mentioned. When a binding contract of guaranty is made upon present consideration, here imported by the seal, liability of the guarantor thereunder can be terminated only in accordance with the terms of the contract. *Zimetbaum* v. *Berenson*, 267 Mass. 250, 254. *Manufacturers' Finance Co.* v. *Rockwell*, 278 Mass. 502, 504. In the case at bar the alleged right of revocation related to securities connected with the obligations in existence at the time the contract of guaranty was executed. On the facts, the defendant had no more right to revoke his authorization to deal with such securities than he had to revoke the guaranty as to any obligation incurred prior to the notice of revocation given by him. Compare *Spring* v. *Leahy*, 254 Mass. 614, 615, 616. Since the defendant had no right to terminate his authorization, he had no right to show that the plaintiff's nondisclosure of facts prevented such termination.

The defendant's contention that the general denial filed by him in the prior action concerning the same subject matter, between the same parties, operated as a termination of such authorization, cannot be sustained.

Without further consideration it is sufficient to say that

we have considered all of the defendant's exceptions, including the exceptions saved to the admission or exclusion of testimony, and find no reversible error.

*Exceptions overruled.*