Fecteau, J.
This is an action for goods sold and delivered brought by the Italian corporation Mobili Berloni, S.p.A.(“Berloni"), a manufacturer of kitchen fixtures, against North Atlantic Designs, Inc., (“NAD”), its dealer, with which it had an on-running business relationship, and one Marc R. Villa (“Villa”), a guarantor to a promissory note which had been executed by NAD to secure payment of “Invoice No. 80.” NAD defaulted and Berloni seeks to enforce the guaranty against Villa. Villa has defended on grounds that payment was made in full on the promissory note which he had guaranteed, and that Berloni has not satisfied the requirements of G.L.c. 181, §4, which requires the registration of foreign corporations “doing *189 business” in Massachusetts, and therefore, pursuant to G.L.c. 181, §9, cannot take advantage of the courts of the Commonwealth to enforce the liability of the parties with which it was doing business.
The case against Villa came on for trial before me, sitting without jury, on March 3, 1997. Upon consideration of all the credible evidence, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
1. For at least one year prior to July 28, 1988, NAD was a dealer in the products manufactured by Berloni and was receiving shipments from Berloni on an open account. By July 28, 1988, NAD’s account with Berloni was in deficiency, showing a balance owed to Berloni in excess of 420 million lira, which, when exchanged into American dollars, amounted to approximately $420,000.00.
2. NAD was in a cash-flow squeeze resulting from not receiving payments on its receivables but needing additional product from Berloni to realize further receipts. Berloni informed NAD that to make any further shipments, Berloni would have to obtain some form of security, either in the form of payment in advance or a guaranteed promissory note. NAD chose the latter option; its president, Robert Turner, asked a friend and business acquaintance, Villa, to guaranty his note, to which Villa agreed.
3. This note, and the guaranty which it includes, states in pertinent part: “the undersigned promises to pay to the order of Mobili Berloni S.p.A. on or before 120 days from the Bill of Lading date on Berloni Invoice No. 80 the amount of Lit. 40,000,000 plus or minus 20 percent.” No invoice accompanies this note as an attachment, nor was any evidence produced as to how this note came to be in the possession of the plaintiff. Turner did not testify, nor did anyone else from NAD. Villa, who did testify, did not know to what “Invoice No. 80" referred, although he implied, at least, and I so infer, that this referred to the next shipment which NAD was expecting and which it would not receive unless Berloni received the security sought and described above. I also infer that the note intended to reflect, and, in fact, does reflect the contemplation that the security was for an invoice received either contemporaneous with the date of the note or to be received in the very near future, and that the terms call for that invoice to be paid within 120 days of its receipt, all of which were to be in the future; otherwise, if the invoice had already been sent, the date thereon would have been known and the due date could have been expressed with certainty, which it was not. I also infer that the invoice in question was going to be approximately in the amount of the note, but again since the invoice had not yet been sent, its exact amount was not known; thus the parties allowed for a twenty percent leeway in the amount promised and guaranteed.
4. On August 1, 1988, Berloni shipped to NAD goods under Invoice No. 7786, in the amount of 42,475,867 lira (which exchanges into approximately $42,476.00). This invoice, rendered by Berloni, expressed the following remarks on the first of two pages: “by promissory note 120 day on or before B/L on our invoice n. 80 plus or minus 20 percent,” and on the second page: “Lit. 40.000.000 by promissory note— Lit. 2.475.887 (6.19%) overage F.O.B. Italian Port.” I infer and so find that the promissory note and guaranty was for the payment of this invoice, notwithstanding that the actual invoice number on the invoice was “7786,” and not “80.”
5. On October 5, 1988, and on March 10, 1989, two payments were received by the plaintiffs corresponding bank, the Banca Nazionale del Lavoro, from NAD, in the amounts of 30.949.000 lira and 12.246.125 lira respectively. These two payments total 43.195.125 lira. There were no invoices which were outstanding which corresponded exactly with either these two amounts separately or together, although their total is within one million lira of the outstanding August 1, 1988 invoice. Although the bank does make a reference, on the larger of the two payment notices, to invoice no. 6287, owed by NAD since July 20, 1987, there is no evidence from NAD or any entity other than the bank as to the intended attribution for this payment. Although it could be inferred that the attribution noted by the bank was generated by the payor NAD, I do not so infer. This payment transmission notice was received into evidence as a record received and kept by Berloni in the usual course of business; however, I find that the payment attribution portion of the record is a multiple-level hearsay which I rule is unreliable and, therefore, inadmissible on the issue of the attribution of the payment. Neither party offered evidence of any kind as to the form or method used by NAD to make these payments nor were the payments themselves put into evidence. There is no evidence on which I can base a finding that these two payments were made on the August 1, 1988 invoice. There is, similarly, no evidence upon which to conclude that compliance was made with the payment term of “120 days."
6. On July 20, 1989, a transmission was sent by its bank to Berloni indicating that the promissory note was being returned to Berloni as it had not been collected. This transmission showed a different promissory note than had been guaranteed by Villa on July 28, 1988, as this note, signed by Turner on behalf of NAD, was dated August 31, 1988, with a promise to pay on December 9, 1988, which is just 100 days and not the 120 days which the note guaranteed by Villa provides. Moreover, this note refers specifically to 42.475.887 lira, the precise amount of the August 1, 1988 invoice, but without specifically referring to it.
*190 7. There have been no payments received by the plaintiff which made specific reference to the promissory note, the guaranty, the August 1, 1988 invoice or any invoice numbered 80 or 7786. The plaintiff attributed the two payments to the outstanding balance on the NAD open account, applying the payments toward the earliest outstanding invoices and not in satisfaction of the note as guaranteed by Villa nor to the August 1, 1988 invoice, Invoice No. 7786.
RULINGS OF LAW
When attempting to enforce a guaranty where the primary debtor defaults, the plaintiff has the burden of proving the following elements: first, the existence of the primary obligation; second, the guaranty of the defendant in writing; third, default of the primary obligation; fourth, that the plaintiff has complied with all of the terms of the primary obligation and the guaranty. Charlestown Five Cents Savings Bank v. Wolf, 309 Mass. 547, 549 (1941); Davis v. Wells, 254 Mass. 118, 125 (1925); Cumberland Glass Mfg. Co. v. Wheaton, 208 Mass. 425, 432 (1911); Root v. Burt, 118 Mass. 521, 523 (1875). When one guarantees the contract of another, the guarantor is bound by the terms of the contract guaranteed. Merchants Nat'l Bank v. Stone, 296 Mass. 243, 251 (1936). His obligations are co-extensive with those of the primary obligor. Id. A contract of guaranty is to be strictly construed and the guarantor is not to be held liable for anything not in accord with the contract. Zimetbaum v. Berenson, 267 Mass. 250, 255 (1929). A contract of guaranty is not defeated simply because the plaintiff is unable to prove that it was for a definite amount or for a definite time. E.g. Zeo v. Loomis, 246 Mass. 366, 368 (1923). Where terms of the guaranty are ambiguous, their import may be determined from the parties’ intent as demonstrated by “the guaranty’s terms and the circumstances surrounding its creation, such as [the] relationship of the parties, actions of the parties and established business usages.” Merrimack Valley Nat’l Bank v. Baird, 372 Mass. 721, 723-24 (1977).
The fact of the underlying obligation of NAD was not contested, nor was the fact of the guaranty’s undertaking by Villa. As to the elements of the plaintiffs burden of proof, they have been satisfied. The issue here is whether the two payments made by NAD should have been applied, in whole or in part, to “Invoice No. 80,” the August 1, 1988 invoice guaranteed by Villa; if so applied, it would be a complete defense to this action as against Villa. If not applied, or applied only in part, a judgment in favor of the plaintiff would be wanranted.
The defense contends that the primary obligation underlying the guaranty was paid. Payment of the debt is an affirmative defense and the burden of proof of such payment rests on the defendant. Barber Asphalt Paving Co. v. Mullen, 220 Mass. 308, 311-12(1915). If a debtor makes a payment, he has the right to apply it to any debt he may owe to the creditor. William Filene’s Sons Co. v. Lothrop, 243 Mass. 214, 217 (1922); Warren Bros. Co. v. Sentry Ins., 13 Mass.App.Ct. 431, 433 (1982). Conversely, if a debtor makes a payment but does not make a specific application of it to a particular debt, the creditor is free to apply it to any such debt. Warren Bros. Co. v. Sentry Ins., 13 Mass.App.Ct. at 433. There is no rule of law which requires a creditor to apply a payment made by a debtor first to debts which have been guaranteed, absent such a direction from the debtor. Id.
Here, there is no evidence upon which to find that NAD applied the two payments in question to the August 1, 1988 invoice, which underlies the guaranty of Villa. Merely because one of the two payments was made within the 120-day period in question, followed some months later by another payment which, when combined with the first, coincidently approximates the amount guaranteed by Villa is insufficient evidence of an application by NAD of these payments toward the debt guaranteed by Villa. The defendant, therefore, has failed to satisfy his burden of proof that the debt which he guaranteed has been paid. Thus, Berloni was entitled to apply the two payments to other debts owed by NAD. Consequently, a judgment in favor of the plaintiff is required.[1]
ORDER FOR JUDGMENT
For the reasons stated above, judgment in favor of the plaintiff shall be entered in the amount of $42,475.00, as against the defendant Mare R. Villa. As concerns the defendant North Atlantic Designs, Inc., which is in default, damages are assessed in the amount of $419,000.00. Judgment shall be entered accordingly.

 The defendant Villa’s alternative argument that Berloni is barred under G.L.c. 181, §9, from maintaining this action because it did not register to do business in Massachusetts pursuant to G.L.c. 181, §4, is without merit because Villa has failed to satisfy his burden of proof establishing that Berloni has not complied with the provisions of c. 181. See Remington Arms Co. v. Lechmere Tire & Sales Co., 339 Mass. 131, 133 (1959) (stating that burden of proof rests with defendant to show that foreign corporation is barred by c. 181 from maintaining action in Massachusetts); see also Monseco Leather, Inc. v. GFC Corp., 1993 Mass. App. Div. 159, 160 (1993). Specifically, the defendant did not offer into evidence any proof of Berloni’s failure to file a foreign corporation registration certificate. Nor did the defendant present any evidence establishing that Berloni’s activities amounted to “doing business” in Massachusetts within the meaning of c. 181, §3. See Shulton, Inc. v. Consumer Value Stores, Inc., 352 Mass. 605, 611-12 (1967) (stating that sale and shipment of goods from out of Massachusetts into Massachusetts is insufficient to require registration under c. 181). Because the defendant has failed to sustain his burden of proof on this issue, the plaintiff is not barred by c. 181, §9, from using the courts of Massachusetts to enforce Villa’s guaranty.