## FEDERAL FINANCIAL CO. *vs.* BLANCHE Z. SAVAGE.

Plymouth. April 3, 2000. - June 23, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Guaranty.*

Where the clear and unambiguous terms of a personal guaranty of a loan required the guarantor to send notice in writing to terminate her obligations, subsequent dealings between the parties without written notice of termination did not operate to terminate the guarantor's obligations. [817-821]

CIVIL ACTION commenced in the Brockton Division of the District Court Department on March 13, 1995.

After removal to the Superior Court Department, the case was heard by *Raymond J. Brassard*, J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael C. McLaughlin* for the defendant.

*Judd L. Peskin* for the plaintiff.

COWIN, J. The defendant, Blanche Z. Savage, sought further appellate review of a Superior Court judgment holding that she is obligated to pay $90,000 plus interest to the plaintiff, Federal Financial Co., the holder of a note given by Ralsco, Inc. (Ralsco), to Plymouth-Home National Bank (bank).[1] The defendant personally guaranteed Ralsco's obligations under the note. We granted her application for further appellate review to consider whether her subsequent transactions with the bank terminated her obligation under the guaranty despite a provision in the guaranty requiring that any termination of the guaranty be provided to the bank in writing. We conclude that the

---

[1]The note at issue was acquired by New Bank of New England, N.A., which was the successor in interest to Plymouth-Home National Bank. New Bank of New England's assets were then taken over by the Federal Deposit Insurance Corporation (FDIC) which assigned the note to the. plaintiff.

defendant's subsequent dealings with the bank do not suffice to terminate her obligation to pay the plaintiff.

The material facts are undisputed. Ralsco was founded by the defendant's late husband. After his death, the defendant became president of Ralsco and her son, James Savage, assumed responsibility for Ralsco's day-to-day operations.[2] On February 20, 1984, the bank agreed to lend Ralsco $90,000 (1984 loan) on the condition that the defendant and her son sign personal loan guaranties. The defendant subsequently signed and delivered the guaranty (1984 guaranty) to the bank on February 28, 1984.[3] The 1984 guaranty covered all present *and future* indebtedness to the bank on the part of Ralsco and provided that the terms of the guaranty would remain in effect unless terminated in writing.

On August 23, 1985, the defendant and her son, on behalf of Ralsco, signed a commitment letter with the bank for a $180,000 loan (1985 loan or 1985 note) from the proceeds of which Ralsco would fully repay the existing 1984 loan. The bank, as a condition for the new loan, asked the defendant and her son to sign new personal guaranties (1985 guaranty). The 1985 guaranty was more comprehensive and provided the bank with more protection than the 1984 guaranty.[4] The defendant refused to sign the 1985 guaranty and signed the commitment letter solely in her capacity as Ralsco's president. On October 17, 1985, just prior to signing the loan documents, the bank again requested that the defendant sign the 1985 guaranty. She refused, but her son agreed to sign, and the bank made the 1985 loan to Ralsco. Ralsco, as security for the 1985 loan, executed and delivered a mortgage to the bank on property that it owned. The defendant also agreed to subordinate an existing mortgage that she held on this property so that it would be junior to the bank's lien.

The plaintiff, as the holder of the 1985 note and the beneficiary of the 1984 guaranty, sought repayment from the

---

[2]James Savage was named as a defendant in the complaint filed in the Superior Court. He was defaulted and is not a party to this appeal.

[3]On February 28, 1984, the son also executed and delivered to the bank a guaranty with the same provisions as the one signed by the defendant.

[4]For example, the 1985 guaranty required that the guarantors waive any right to have the borrower joined in a suit brought against the guarantor on the guaranty. In addition, it stated that any act, delay, omission, or course of dealing between the bank and borrower or guarantors would not be a waiver of any of the bank's rights under the guaranty.

defendant of the 1985 loan for $180,000 plus interest. A Superior Court judge, on the plaintiff's motion for summary judgment, ruled that the 1984 guaranty was inoperative as it related to the 1985 loan. He relied on *Atlantic Aluminum & Metal Distribs., Inc.* v. *Standard Paint & Wall Paper Co.*, 347 Mass. 415 (1964), which stated that when a guaranty is unlimited in time by its terms it is only operative for a reasonable time to be determined from all the circumstances. The judge concluded that the 1984 guaranty was unlimited in time and that the defendant's refusal to sign the 1985 guaranty and the bank's decision to proceed with the 1985 loan without a new personal guaranty indicate that the 1984 guaranty was terminated. The judge held that, while the defendant's refusal to sign the 1985 guaranty terminated the 1984 guaranty, the defendant "remains obligated to repay the original $90,000 loan that was secured by the 1984 guaranty."[5]

The Appeals Court, in an unpublished memorandum pursuant to its rule 1:28, affirmed the Superior Court judgment but applied different reasoning. 47 Mass. App. Ct. 1107 (1999). The Appeals Court, relying on *Community Nat'l Bank* v. *Loumos*, 6 Mass. App. Ct. 830, 831 (1978), held that the 1984 guaranty signed by the defendant continued in effect for purposes of the 1985 loan because the defendant never provided written notification to the bank as required by the terms of the 1984 guaranty. Although pursuant to this reasoning the plaintiff would have a claim for the full amount of the 1985 loan ($180,000), the Appeals Court concluded that the plaintiff had waived any claim beyond $90,000 because it failed to file a cross appeal from the Superior Court judgment.

The Appeals Court, in its memorandum, did not address the relevance of *Atlantic Aluminum & Metal Distribs., Inc.* v. *Standard Paint & Wall Paper Co.*, 347 Mass. 415 (1964). The defendant petitioned for rehearing and the Appeals Court allowed the petition for the purpose of considering the significance

---

[5]The judge's decision to order repayment of the "original" 1984 loan appears to be an error as the judge had concluded that the 1984 guaranty was terminated and, as a factual matter, there was no outstanding debt owed by Ralsco on the 1984 loan. Based on the summary judgment submissions of the parties, it is undisputed that the 1984 loan was repaid by Ralsco from the proceeds of the 1985 loan. However, the plaintiff did not cross-appeal from the Superior Court judgment and has conceded in its brief that it is satisfied with the $90,000 amount of the judgment. Therefore, the amount of the Superior Court judgment is not at issue in this appeal.

of the *Atlantic Aluminum* case. The Appeals Court concluded that, because the 1984 guaranty had a provision requiring written notice of termination, the *Atlantic Aluminum* case had no relevance. The Appeals Court thus affirmed its original decision. *Federal Fin. Co.* v. *Savage*, 48 Mass. App. Ct. 903 (1999).

The issue we consider is whether the defendant's subsequent dealings with the bank, i.e., refusing to sign the 1985 guaranty, signing the commitment letter for the 1985 loan only in her capacity as Ralsco's president, and subordinating her mortgage on Ralsco property as additional security for the 1985 loan, terminated her obligation under the 1984 guaranty. We agree with the Appeals Court's conclusion that the defendant could only terminate the 1984 guaranty by sending a written notice to the bank.

A guaranty is a contract "like all other contracts." *Merchants Nat'l Bank* v. *Stone*, 296 Mass. 243, 250 (1936). When the words of the guaranty "are clear they alone determine the meaning." *Merrimack Valley Nat'l Bank* v. *Baird*, 372 Mass. 721, 723 (1977). The words of the 1984 guaranty signed by the defendant are clear and unambiguous. The termination clause of the 1984 guaranty provides that "[t]his Guaranty is made and shall continue as to any and all such indebtedness and liability of Borrower to the Bank incurred or arising prior to receipt by the Bank of written notice of the termination hereof from the undersigned . . . ." The 1984 guaranty provides only one mechanism for termination, i.e., the defendant must send written notice to the bank. The defendant never informed the bank in writing of her intention to terminate her obligation under the 1984 guaranty. Thus, she did not comply with the terms of the contract, and refusing to sign the 1985 guaranty does not affect her obligation under the 1984 guaranty. Any other conclusion would be inconsistent with the well-established rule that the "liability of the guarantor . . . can be terminated only in accordance with the terms of the contract." *Merchants Nat'l Bank* v. *Stone, supra* at 252. See *Manufacturers' Fin. Co.* v. *Rockwell*, 278 Mass. 502, 504 (1932); *Community Nat'l Bank* v. *Loumos, supra.*

The defendant contends that the written termination provision of the 1984 guaranty does not govern because the guaranty was unlimited in time. The defendant argues that guaranties unlimited in time are only operative for a reasonable time and that the bank's attempt and failure to obtain a further guaranty

indicates that the 1984 guaranty was no longer binding. In support of her contention the defendant cites *Atlantic Aluminum & Metal Distribs., Inc.* v. *Standard Paint & Wall Paper Co., supra.* In the *Atlantic Aluminum* case we considered whether a guaranty "unlimited in time by its terms" signed in 1954 was still operative in 1959. We concluded that such a guaranty was not operative and "[a]ny doubt as to the continuance of the 1954 guaranty until 1959 was resolved by [the plaintiff's] action in 1956, in seeking and obtaining another guaranty for a specific sale and later seeking and failing to obtain from [the defendant] further guaranties." *Id.* at 417.

In reaching our conclusion in the *Atlantic Aluminum* case, we relied on our decision in *Zeo* v. *Loomis*, 246 Mass. 366, 368 (1923), in which we held that a guaranty without a written duration provision is "operative for a reasonable time." However, we cautioned that this rule is only applicable where the duration period cannot "be ascertained from the terms of the written instrument by which [the obligation] is expressed." *Id.* The rule established in the *Zeo* case and applied in the *Atlantic Aluminum* case concerning a guaranty without a written duration provision has no application to this dispute. In the *Zeo* and *Atlantic Aluminum* cases, the language of the guaranties provided that the guarantors personally promised to repay the debts of a third party indefinitely. Unlike the guaranties at issue in those cases, the guaranty here is not indefinite because it has a duration provision; it is in effect until the defendant provides a written notice of termination. This is not a formalistic distinction. In the *Zeo* case, the parties failed to provide for an end to the obligation under the guaranty. *Id.* at 367. The court concluded that it was unlikely that the parties intended such an indefinite agreement and assumed that the parties intended the guaranty to be operative only for a reasonable time. *Id.* at 368. Thus, the court inferred a reasonable duration provision. *Id.* In this case, the parties explicitly bargained for a duration period, i.e., termination after written notice. The fact that the guarantor could terminate the guaranty at any time further justifies the conclusion that there is a specific time limit. A reasonable time limit is inferred when no time limit is expressed. Here, a time limit is provided and it is particularly simple for the guarantor because it can be implemented at any time. No public policy is served by ignoring this provision and treating the agreement as a guaranty without duration.

In addition, the defendant makes a separate argument that her refusal to sign the 1985 guaranty and the bank's subsequent issuance of the 1985 note indicate an oral modification terminating her obligation under the 1984 guaranty. The flaw in the defendant's argument is that, even if the parties could subsequently modify the termination provision of the 1984 guaranty, the defendant has not established that she or the bank attempted to make such a modification. In her affidavit, which is part of the summary judgment record, the defendant stated that she refused to sign the 1985 guaranty. However, she never claimed that her refusal to sign the 1985 guaranty and the bank's issuance of the 1985 note without a new guaranty was an agreement between her and the bank to terminate the 1984 guaranty. A request for a new guaranty is not an indication that the bank sought to terminate the 1984 guaranty. The bank apparently desired more security for the 1985 loan by seeking a guaranty with more extensive provisions. However, in the absence of obtaining the additional security provisions for the 1985 loan, there is no evidence that the bank intended to release the defendant from the 1984 guaranty. Thus, on the undisputed facts, as a matter of law, the 1984 guaranty was not terminated.

The defendant erroneously relies on *Bank One Texas Nat'l Ass'n* v. *Morrison*, 26 F.3d 544 (5th Cir. 1994); *First Acadiana Bank* v. *Bieber*, 582 So. 2d 1293 (La. 1991); and *Kelly Springfield Tire Co.* v. *Faulkner*, 191 Wash. 549 (1937). In *Bank One* and *Kelly Springfield*, the courts held that questions of fact existed as to whether a written guaranty was terminated by a subsequent agreement. In these cases, there was ample evidence in the record showing the possible existence of a subsequent agreement. In *Bank One*, among other evidence, the bank stamped across the original guaranty the word "cancelled" and a bank officer testified that the bank had released the guarantor. *Bank One Texas Nat'l Ass'n* v. *Morrisson, supra* at 545. In *Kelly Springfield Tire Co.* v. *Faulkner, supra* at 553, there was evidence of an express oral agreement to terminate the prior guaranty. In *First Acadiana Bank* v. *Bieber, supra* at 1297, the court noted in dictum that the parties to a written guaranty could arguably terminate that guaranty by their conduct. These cases are inapplicable because, as discussed, *supra*, the defendant has failed to produce any evidence showing that she had an agreement with the bank to terminate the 1984 guaranty.

Moreover, even if the bank and the defendant had orally modified the 1984 guaranty such a modification would not be enforceable under the *D'Oench* doctrine. See *Bisson* v. *Eck*, 430 Mass. 406, 413 n.6 (1999), citing *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, 315 U.S. 447, 459-462 (1942), later codified at 12 U.S.C. § 1823(e) (1991 & Supp. 2000). This doctrine prohibits the enforcement against the Federal Deposit Insurance Corporation (FDIC) or its assignees of undisclosed agreements that would diminish assets that the FDIC acquired from failed banks. *Federal Deposit Ins. Corp.* v. *McFarland*, 33 F.3d 532, 536 (5th Cir. 1994). The purpose of this doctrine is to allow government insurers of banks and purchasers of assets from them "to rely on the primary documents that govern the loan transaction . . . and . . . not to be bound by off-record collateral agreements, written or unwritten, that depreciate the value of those assets." *Federico* v. *Brockton Credit Union*, 39 Mass. App. Ct. 57, 59 (1995). The defendant claims that the *D'Oench* doctrine is inapplicable because there is ample evidence in the record that the plaintiff, the assignee of the FDIC (see note 1, *supra*), was aware of the agreement between the bank and the defendant to terminate the 1984 guaranty. We disagree. There is no evidence in the record that there is any writing in the loan documents showing an agreement to terminate the 1984 guaranty. Thus, even if the defendant and the bank had agreed orally to cancel the 1984 guaranty, the *D'Oench* doctrine prohibits enforcement of such an agreement.[6]

Because there is no enforceable oral modification to the 1984 guaranty, the defendant must comply with the original written termination provision. As the defendant did not send the bank the required written notice to terminate the 1984 guaranty, she is bound by its terms.

This was an arm's-length transaction between sophisticated individuals culminating in the defendant's company receiving the benefit of two bank loans. Partially in exchange for the company's receiving that benefit, the defendant committed to repay the loans if the company should default. The bank

---

[6]The defendant also contends that the bank is estopped from arguing that the 1984 guaranty was valid. Not having raised the argument below, it cannot be raised for the first time on appeal. See *Moloney* v. *Boston Five Cents Sav. Bank FSB*, 422 Mass. 431, 436 (1996); *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 851 (1983); *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n*, 386 Mass. 64, 67 (1982).

proceeded on this understanding; the company defaulted and the defendant is now obligated to repay. If the defendant wished to terminate the guaranty in 1985, she was bound to follow the contractual provisions for notifying the bank in writing. It would be unfair to the plaintiff and upset certainty in loan transactions if the defendant could avoid her obligation in these circumstances.

*Judgment affirmed.*