NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-791                                    Appeals Court

CEDAR-FIELDSTONE MARKETPLACE, LP vs. T.S. FITNESS, INC.,[1] & another.[2]

No. 17-P-791.

Bristol.       February 2, 2018. - March 15, 2018.

Present: Milkey, Massing, & Shin, JJ.

Guaranty. Contract, Lease of real estate, Release from liability, To guarantee rent payments. Release. Real Property, Lease.

Civil action commenced in the Superior Court Department on June 18, 2015.

The case was heard by Renee P. Dupuis, J., on motions for summary judgment.

John A. Walsh for the defendants.
John F. White, Jr., for the plaintiff.

MILKEY, J. In this case, we consider whether the release of a landlord's claims against a tenant for unpaid rent pursuant to a lease precluded the landlord from bringing a collection

---

[1] Doing business as Escape to Fitness.

[2] Thomas W. Sheridan.

action against a guarantor of the lease.  We conclude that it did not.

Background.  The defendant T.S. Fitness, Inc. (tenant), rented commercial property in New Bedford from the plaintiff, Cedar-Fieldstone Marketplace, LP (landlord).  In 2011, those parties agreed to a modification of the then-existing lease between them.  To secure the tenant's payment obligations under the modified lease, the tenant's president, the defendant Thomas W. Sheridan, executed a personal guaranty, which was memorialized in a detailed, three-page document.  Under the terms of the guaranty, Sheridan's liability was "co-extensive with that of [the t]enant," except that it was capped at a specified amount, $52,271.06.  The existence of that cap appears to explain why the document is captioned a limited guaranty.

Except for the cap on his liability, Sheridan's obligations under the guaranty are set forth expansively, as we will review in detail later.  The guaranty states that "[n]o waiver or modification of any provision of this [g]uaranty nor any termination of the [g]uaranty shall be effective unless in writing, signed by [the l]andlord."

After the lease modification, the tenant subsequently defaulted on the lease, prompting the landlord to bring a summary process action against it in District Court.  That action was resolved through an agreement for judgment in

February of 2013. The parties to the agreement for judgment were the parties to the summary process action, that is, the landlord and the tenant. Sheridan himself signed the agreement for judgment, but he did so in his capacity as president of the tenant.

The essence of the agreement for judgment was that the landlord allowed the tenant to occupy the premises for an additional three months, and that the tenant agreed to vacate the premises after that and to make agreed-to monthly use and occupancy payments in the interim. The body of the agreement for judgment included a paragraph through which the tenant expressly (and broadly) released its potential claims against the landlord. Curiously, there is no corresponding provision that addresses what claims the landlord agreed to release. However, in prefatory "whereas" clauses, there is language that could be taken to suggest that the agreement for judgment was intended to resolve the entirety of the dispute between the parties.[3]

---

[3] The relevant language is as follows:

"WHEREAS, by this Agreement, the [landlord] and [the tenant] desire to settle the [District Court summary process action] and any and all of the disputes, if any, arising out of [that action];

"WHEREAS, by this Agreement, the [landlord] and [the tenant] also desire to settle any and all of the disputes, if any, arising out of the [l]ease, whether or not such

After the agreement for judgment had been executed, the landlord brought a collection action in Superior Court against both the tenant and Sheridan seeking over $100,000 in unpaid rent. Relying on the prefatory language quoted in note 3, supra, a Superior Court judge (first motion judge) ruled, as a matter of law, that the agreement for judgment barred the landlord's only count (breach of contract) against the tenant.[4] That count eventually was dismissed, and the landlord took no appeal from that ruling when the judgment ultimately issued.

However, a second Superior Court judge (second motion judge) ruled on summary judgment that the landlord's counts against Sheridan as guarantor were not similarly barred.[5] Because it was undisputed that the unpaid rent exceeded the specified amount that Sheridan had agreed to guarantee

---

disputes could have been raised by the [tenant] within this court proceeding;

"WHEREAS, the [landlord] and [the tenant] have agreed that it is in their mutual interest to resolve fully and finally all of the disputes which were, have been, or could have been raised in connection with the [summary process action] and/or [the l]ease, whether or not such disputes could have been raised by the [tenant] within this court proceeding."

[4] It appears that the first motion judge issued this ruling in response to the landlord's efforts to obtain a default judgment against the tenant.

[5] In the last two counts of his complaint, the landlord asserts that Sheridan is liable pursuant to the guaranty and requests declaratory relief as to Sheridan's liability pursuant to the guaranty.

($52,271.06),[6] the second motion judge granted summary judgment in the landlord's favor against Sheridan in that amount. Accordingly, judgment issued ordering Sheridan to pay the landlord $52,271.06, plus attorney's fees and costs.[7] Sheridan appealed, arguing that he no longer could be liable under the guaranty once the tenant's underlying liability was resolved by the agreement for judgment. We affirm.

Discussion. For purposes of our analysis, we will assume, without deciding, that the first motion judge was correct to conclude that the agreement for judgment barred the landlord's collection count against the tenant. The limited issue we face is whether, based on that premise, the landlord's counts against Sheridan as guarantor also were barred.

The argument that Sheridan makes on appeal is a narrow one. It is undisputed that Sheridan himself was not a party to the agreement for judgment, and he makes no claim that he was an

---

[6] After reviewing the summary judgment record, the second motion judge concluded that "[t]here does not appear to be any factual dispute that the total amount of [the tenant's] debt exceeds the extent of [Sheridan's] guaranty." Sheridan does not challenge this on appeal.

[7] Pursuant to the guaranty, Sheridan had agreed to pay the landlord "all of [the l]andlord's expenses including but not limited to reasonable attorneys' fees incurred in enforcing this [g]uaranty."

intended third-party beneficiary of it.[8] Thus, Sheridan is not claiming that when the parties terminated the summary process action through the agreement for judgment, they in fact agreed that his obligations as guarantor had been released as part of a comprehensive settlement. Rather, he argues that once the tenant no longer was liable under the lease, he automatically was relieved of his guaranty obligations as a matter of law.[9] He bases this contention on what he characterizes as the "black letter legal principle that a guarantor's obligations are

---

[8] Moreover, any such claim would have failed as a matter of law, because the agreement for judgment expressly states that it was not intended to create any third-party beneficiaries. See Cumis Ins. Soc., Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 464 (2009) ("Where the parties have expressly and unambiguously stated an intention to exclude third-party beneficiaries, that intent is controlling"). In addition, reading the agreement for judgment as having been intended to cover the landlord's claims against Sheridan would be at odds with common sense and the reasonable expectations of the parties. See Chambers v. Gold Medal Bakery, Inc., 83 Mass. App. Ct. 234, 245-246 (2013), citing Schaer v. Brandeis Univ., 432 Mass. 474, 478 (2000). Where the landlord's summary process case against the tenant appears to have rested on solid footing, it is highly implausible that the landlord would have given up its guaranty rights against Sheridan merely in return for the tenant's agreement to move out by a date certain three months later and to pay use and occupancy in the interim.

[9] Sheridan additionally contends that the landlord's counts against him as guarantor were barred by claim preclusion, based on Sheridan's claim that he "as a matter of law [was] a privy of [the tenant]" in the earlier summary process action. There is no merit to that argument. Indeed, Sheridan could not properly have been joined as a defendant in the summary process action. See Cummings Properties, LLC v. Cepoint Networks, LLC, 78 Mass. App. Ct. 287, 289 (2010).

coextensive with those of the principal obligor." We are unpersuaded.

To be sure, the cases do recite that "the liability of the guarantor cannot exceed the liability of the debtor." See 275 Washington St. Corp. v. Hudson River Intl., LLC, 465 Mass. 16, 30 (2013). However, that principle is of more limited application than Sheridan warrants. It stands for the straightforward proposition that a guarantor's own liability is bounded by the scope of the underlying liability that he has guaranteed.[10] Thus, in the case at hand, Sheridan's liability under the guaranty could not exceed the tenant's payment obligations that arose under the terms of the lease. See ibid. However, it is a different question altogether whether a subsequent negotiated compromise of such underlying liability affected Sheridan's obligations as guarantor of the tenant's lease obligations.

We consider it self-evident that parties negotiating the terms of a guaranty would be free to agree that a subsequent release of a principal obligor's underlying debt would result in a discharge of the guarantor's own obligations. But we see nothing in the case law or elsewhere that requires such a term

---

[10] Similarly, where the principal obligor has agreed to take on additional liability, the guarantor is not liable for that "unless he had knowledge of it and consented thereto." Davis v. Wells, 254 Mass. 118, 127 (1925).

as a matter of law. Put differently, we see no legal bar to a guarantor's agreeing -- as part of the negotiated terms of a guaranty -- that his obligation to fund the underlying debt would survive a settlement of that debt between the principal obligor and the recipient of the guaranty. Rather, what the parties to a guaranty agree to in this regard is simply a matter of contractual intent. After all, "[a] guaranty is a contract 'like all other contracts.'" Federal Financial Co. v. Savage, 431 Mass. 814, 817 (2000), quoting from Merchants Natl. Bank v. Stone, 296 Mass. 243, 250 (1936). Accordingly, "[t]he liability of a guarantor is to be ascertained from the terms of the written instrument by which the obligation is expressed, construed according to the usual rules of interpretation." Agricultural Natl. Bank of Pittsfield v. Brennan, 295 Mass. 325, 327 (1936).

Turning from theory to practice, we are left with little doubt about the intent of the parties here. The express terms of the guaranty can best be described as "unforgiving" to Sheridan. The guaranty is denominated as "absolute and unconditional," and Sheridan's liability is made joint and several with that of the tenant. Moreover, the guaranty states that there are no procedural steps that the landlord must take as preconditions to its seeking recovery from Sheridan (such as first seeking recovery from the tenant). It also makes plain

that Sheridan's obligations survive even if the tenant is unable to make payment by reason of bankruptcy or mere insolvency. In addition, while the guaranty does not directly address the specific contingency of a settlement between the landlord and the tenant, it does include the following expansive language that encompasses such a scenario:

> "[T]he liability of [Sheridan] hereunder shall in no way be affected, modified or diminished by reason of . . . any consent, release[,] indulgence or other action, inaction or omission under or in respect of the [l]ease, or . . . any dealings or transactions or matter or thing occurring between [the l]andlord and [the t]enant."

Finally, the guaranty recites that "[a]ll of [the l]andlord's rights and remedies under the [l]ease and under this [g]uaranty, now or hereafter existing at law or in equity or by statute or otherwise, are intended to be distinct, separate and cumulative and no exercise or partial exercise of any such right or remedy therein or herein mentioned is intended to be in exclusion of or a waiver of any of the others."

Through the express terms just quoted, it is plain that the guaranty was intended to provide the landlord a lock-tight means for collecting unpaid rent from Sheridan (up to the agreed-to cap). It is similarly plain that the landlord's rights under the guaranty were intended to exist independent of the landlord's rights to collect unpaid rent from the tenant, and that the parties intended that the guaranty would not be

affected by future contingencies regarding the lease (including, for example, a decision by the landlord to compromise a collection action against the tenant).  Our conclusion is also consistent "with the well-established rule that the 'liability of the guarantor. . . can be terminated only in accordance with the terms of the contract.'"  Federal Financial Co. v. Savage, supra, quoting from Merchants Natl. Bank v. Stone, supra at 252.

In sum, the terms of the guaranty are plain, thereby rendering the landlord's guaranty claim amenable to resolution on summary judgment.  See Lumber Mut. Ins. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995) (the interpretation of an unambiguous contract presents a question of law appropriate for summary judgment).  Because it is undisputed that the unpaid rent exceeded the amount of the guaranty, the second motion judge correctly entered summary judgment in the landlord's favor requiring Sheridan to pay the amount he had agreed to guarantee.

Judgment affirmed.