NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-504

CHARLES D. CLARKE

vs.

DONNA M. MURPHY.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal arises from a partnership dissolution between Charles D. Clarke and Donna M. Murphy.  Murphy appeals from a judgment entered March 28, 2023, raising various claims of error with respect to (1) an order entered by a Superior Court judge on Murphy's summary judgment motion that resolved certain issues in Clarke's favor, and (2) the judgment, entered by a different Superior Court judge after a jury-waived trial, in Clarke's favor on all remaining claims.  We see no cause to disturb the judgment, thus we affirm.

_____

[1] Individually and as trustee of the 158 Adams Realty Trust.

Background.  With respect to the summary judgment order, we summarize the undisputed facts in the light most favorable to Murphy, the party against whom the order entered.[2]

In March 2004, Clarke entered into a partnership agreement with Murphy (Partnership Agreement), in which they agreed to purchase a certain mixed-use property (Property) through a trust, lease the commercial use part of it to Clarke's catering company, Classic Catering, Inc. (CCI), and rent out the residential units.  On the same day they signed the Partnership Agreement, Murphy formed and became trustee of the 158 Adams Realty Trust (Trust), of which she and Clarke were the sole beneficiaries.  The Trust purchased the Property subject to a seller-financed mortgage.  The Trust, Murphy, and Clarke executed a promissory note (Note), secured by a mortgage on the Property (Mortgage), promising to pay the sellers the purchase price of the property plus interest.

As established in the Partnership Agreement, Murphy provided an initial $49,000 in cash to the Trust, and Clarke

---

[2] While Murphy moved for summary judgment, the motion judge properly entered a partial summary judgment order in Clarke's favor even though he did not file a cross motion for summary judgment.  See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002) ("Summary judgment, when appropriate, may be rendered against the moving party").  See also Targus Group Int'l, Inc. v. Sherman, 76 Mass. App. Ct. 421, 422 n.2 & 428-434 (2010) (affirming summary judgment in favor of nonmoving party in breach of contract claim based on court's interpretation of written agreement).

contributed $1,000.  Accordingly, Murphy initially owned ninety-eight percent of the beneficial interest in the Trust, while Clarke only owned two percent.  However, the Partnership Agreement provided that a share of CCI's monthly rent payments would be counted as capital contributions to the Trust and that Clarke's beneficial interest would increase accordingly until he owned fifty percent of the Trust.

Clarke and Murphy orally agreed to waive CCI's rent payments for January, February, and March 2014.  In exchange, Murphy paid herself a $5,400 disbursement from the Trust.

In May 2015, Clarke and Murphy formed Classic Catering Concepts, Inc. (CCC) to operate using the Property and Clarke's equipment and fixtures.  Clarke and Murphy were equal owners of CCC.  Clarke ran the catering operations; Murphy provided all necessary back office support.

In September 2017, Clarke told Murphy he could no longer run CCC's catering business.  Clarke sold the catering equipment and fixtures installed at the Property when CCI started doing business there.  Clarke paid Murphy $1,000 from the proceeds of the sale.  At that time, the main fixtures (which included a dishwasher, water heater, and range hood) had an aggregate value of less than $1,000.

The trial judge found the following facts.

3

CCC struggled financially and regularly failed to pay the Trust rent from September 2015 through July 2017. Murphy treated CCC's use of the Property as a benefit solely to Clarke, and when CCC failed to pay rent, she removed half of the equivalent of CCC's rent from the Trust for her personal use.

In September 2017, Clarke told Murphy he wanted to sell CCC's catering business. Clarke could not find a buyer. In October 2017, Murphy removed Clarke's access to the Trust account and denied his subsequent requests to restore it. In November 2017, Clarke told Murphy he wanted to sell the Property and dissolve the partnership.

In January 2018, Murphy stopped providing Clarke with money from the Trust bank account for any purpose, including distributions from the Trust's profit. From January 1, 2018, through June 2021, Murphy paid herself at least $12,888.80 in distributions. In September 2019, Murphy transferred $20,000 from the Trust account to her personal bank account.

Procedural history. In May 2018, Clarke filed this action in Superior Court, seeking dissolution of the partnership and alleging breach of fiduciary duty in his complaint. With her amended answer, Murphy filed an eleven count counterclaim likewise seeking dissolution of the partnership and alleging breach of fiduciary duty, breach of the duty of loyalty, breach of contract, breach of the implied covenant of good faith and

4

fair dealing, conversion, fraud, breach of guarantee, breach of lease, and c. 93A violation; she also sought to pierce the corporate veil to hold Clark jointly and severally liable with CCC.

In an order dated December 10, 2020, a Superior Court judge (motion judge) granted partial summary judgment in favor of Clarke, holding, as relative to Murphy's appeal, that, (1) Clarke fulfilled his obligation to guarantee the Note and Mortgage and that, if it were found this obligation were to be a condition precedent to Clarke accruing a substantial beneficial interest in the Trust, Clarke satisfied this condition; (2) Clarke did not breach the lease by failing to pay rent from January through March 2014; (3) Murphy and the Trust received the fair value of the trade fixtures Clarke removed; and, (4) Murphy could not pierce the corporate veil of CCC and hold Clark personally liable for the alleged failure to pay rent to the Trust.[3]

A different Superior Court judge (trial judge) concluded all claims in favor of Clarke after a jury-waived trial.  The trial judge awarded Clarke damages and ordered that the

---

[3] Murphy does not here challenge so much of the motion judge's order as dismissed her counterclaim seeking to pierce the corporate veil.

partnership and Trust be dissolved and the Property sold, with Clarke and Murphy each receiving half the sales proceeds.

Discussion. 1. Summary judgment. As mentioned above, the motion judge granted partial summary judgment in favor of Clarke. "We review a grant of summary judgment de novo," Deutsche Bank Nat'l Trust Co. v. Fitchburg Capital, LLC, 471 Mass. 248, 252-253 (2015), to determine "whether the evidence, viewed in the light most favorable to the losing party, establishes all material facts and entitles the successful party to a judgment as a matter of law." Targus Group Int'l, Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010). "Where the language of a contract is clear and unambiguous, summary judgment is an appropriate vehicle for judicial interpretation because the court may interpret the meaning of the contract as a matter of law without resort to extrinsic evidence or determinations of fact." Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 440 (2006). "Where . . . the material facts are not in dispute, and the question of the parties' intention turns on the language of original and revised written agreements, the question of intention [is] to be determined by the usual process of interpretation, implication, and construction [quotation omitted]." Community Bldrs., Inc. v. Indian Motocycle Assocs., Inc., 44 Mass. App. Ct. 537, 548 (1998).

a.  Guarantee of the Note and Mortgage.  On appeal,
Murphy's primary argument is that, under the terms of the
Partnership Agreement, Clarke's beneficial interest in the Trust
never exceeded his initial two percent.  She so argues because
Clarke purportedly did not satisfy his obligation to guarantee
the Note and Mortgage insofar as he failed to execute a separate
personal guaranty.[4]  Murphy contends that doing so was a
condition precedent to counting CCI's rent payments as Clarke's
capital contributions to the Trust.[5]

As comakers of the Note, Clarke, Murphy, and the Trust were
jointly and severally liable for the debt.  See G. L. c. 106,
§ 3-116 (a) ("Except as otherwise provided in the instrument,
two or more persons who have the same liability on an instrument
as makers . . . are jointly and severally liable in the capacity
in which they sign").  The liability of a guarantor of a
promissory note is generally "indistinguishable from that of a
co-maker" (quotation omitted).  D'Annolfo v. D'Annolfo Constr.

---

[4] Murphy further claims the Partnership Agreement's penalty
clause entitled her to eliminate Clarke's equitable interest in
the Trust.  While the motion judge held that clause
unenforceable, we need not reach that issue because we conclude
no default occurred.

[5] Because we conclude, as discussed below, the motion judge
did not err in ruling that Clarke satisfied his obligations
under the Partnership Agreement, we need not decide if
guaranteeing the Note and Mortgage was a condition precedent to
Clarke accruing beneficial interest in the Trust.

7

Co., 39 Mass. App. Ct. 189, 192 (1995).  See Seronick v. Levy, 26 Mass. App. Ct. 367, 371 (1988) ("If one is primarily liable as a maker, jointly and severally, it adds nothing to say one is liable all over again").[6]  Nevertheless, Murphy argues that Clarke was required to execute a separate guaranty to satisfy the terms of the Partnership Agreement.[7]  We disagree.

The objective of contract interpretation is to "construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose" (quotation omitted).  Balles v. Babcock Power Inc., 476 Mass. 565, 578 (2017).  "[I]nterlocking documents [that] are part of a single transaction and are 'interrelated in purpose,' must be read together to effectuate the intention of the parties." Striar v. American Med. Int'l, Inc., 45 Mass. App. Ct. 87, 95 (1998), quoting Chase Commercial Corp. v. Owen, 32 Mass. App. Ct. 248, 250-251 (1992).

The Partnership Agreement required Clarke's "personal and individual guarantee on the Note, Mortgage and Lease."  Those documents were attached to the Partnership Agreement and

---

[6] While there are circumstances in which the liability of a guarantor may exceed that of the primary obligor, none are applicable here.  See, e.g., SKW Real Estate Ltd. Partnership v. Gold, 428 Mass. 520, 525 (1998).

[7] It is undisputed that the Trust paid off the Note in May 2013.

executed simultaneously. The lease document included a guaranty for Clarke to sign personally. There was no separate guaranty of the Note attached for Clarke to sign.

Reading the documents together, the requirement that Clarke "guarantee" the Note required only that he cosign the Note. While a cosigned promissory note is not a guaranty in the technical sense, that is the intended meaning as used in the Partnership Agreement. See Doral Country Club, Inc. v. O'Connor, 355 Mass. 27, 31 (1968) ("It was not a guaranty . . ., because the defendant's obligation, unlike a guarantor's, ran directly and originally to the plaintiff"). Murphy's suggested interpretation fails to explain why Clarke's signature was required on the Note despite no other provision in the Partnership Agreement requiring him to cosign it. Implausibly, she suggests that Clarke gratuitously signed the Note, incurring liability for the loan for no benefit, but failed to sign a guaranty, imposing identical liability with significant financial benefit.

Likewise, the obligation to guarantee the Mortgage required only a guarantee of the loan obligation that the Mortgage secured. See Deutsche Bank Nat'l Trust Co., 471 Mass. at 254 (construing statutory reference to "maturity date of [a] mortgage" as referring to "the date on which the underlying debt

9

is due because a mortgage derives its vitality from the debt that it secures").

b. Breach of lease. Although Murphy does not dispute she entered into an oral agreement to waive CCI's rent from January through March 2014, she argues that only CCI's liability under the lease was relieved, not Clarke's obligation to pay rent as a guarantor. This argument is without merit. The parties' undisputed oral agreement that CCI did not have to pay rent for the first three months of 2014 was an effective modification of the lease, and did not constitute a breach by Clarke. See Commonwealth Inv. Co. v. Fellsway Motor Mart, Inc., 294 Mass. 306, 314 (1936). Though the lease states that it can only be modified in writing, such a provision is unenforceable when there is clear evidence of subsequent oral modification. See, e.g., Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432, 439 (1992) ("a provision that an agreement may not be amended orally but only by a written instrument does not necessarily bar oral modification of the contract"). Likewise, the parties' oral agreement effectively modified the lease guaranty. See Federal Fin. Co. v. Savage, 431 Mass. 814, 817 (2000) ("A guaranty is a contract like all other contracts" [quotation omitted]).

Murphy's reliance on Cedar-Fieldstone Marketplace, LP v. T.S. Fitness, Inc., 93 Mass. App. Ct. 33 (2018), for the proposition that a modification of the underlying lease cannot

10

relieve a guarantor's obligation to pay, is misplaced.  In that case, the court's holding rested on the terms of the guaranty, which expressly disclaimed any limitation of liability based on "any consent, release[,] indulgence or other action, inaction or omission under or in respect of the [l]ease."  Id. at 37.  No such language was included in the lease guaranty in this case.  Moreover, unlike the landlord in Cedar-Fieldstone Marketplace, the modification left Murphy no worse off than under the original lease terms.  See id. at 35.  Murphy withdrew the full three months' rent, twice what she would have received as a distribution from the Trust had the rent been paid.  In other words, despite the agreed amendment of the lease, Murphy received the full benefit of the rent payments called for under the lease, and would therefore not have been entitled to recover anything under the guaranty.  That the Trust is the nominal injured party is immaterial.  See Morrison v. Lennett, 415 Mass. 857, 862 (1993) ("there is logic in treating the beneficiaries of a nominee trust as the true owners of the property for the purposes of liability as well as benefit" [quotation omitted]).

c.  Sale of Fixtures.  Murphy alleges that Clarke's sale of the catering fixtures constituted, inter alia, a breach of his fiduciary duty, a breach of contract, and conversion.  The motion judge correctly ruled this claim fails as a matter of law because Murphy could not prove damages.  See Schwartz v.

11

Travelers Indem. Co., 50 Mass. App. Ct. 672, 682 (2001) (affirming summary judgment for defendant on contract claim because plaintiff could not establish damages). The facts were undisputed that Clarke paid Murphy $1,000 from the amount received for selling the catering equipment and fixtures, and that the aggregate fair market value of the equipment was less than that at the time.

Accordingly, we discern no error in the motion judge's grant of partial summary judgment.

2. Trial. The trial judge found that Clarke did not engage in fraud or conversion and did not breach his fiduciary duty to Murphy, his duty of loyalty, the Partnership Agreement, the implied covenant of good faith and fair dealing, or any guaranty. The trial judge further found that Murphy breached her fiduciary duty to Clarke. The trial judge awarded Clarke damages and ordered the partnership and Trust to be dissolved and the Property to be sold, with Clarke and Murphy each receiving half the sales proceeds. Murphy argues, in summary, that the trial judge erred by (1) including the Property among partnership assets because the Trust owns the Property, (2) not awarding damages for CCC's breach of the lease, and (3) failing to find that Clarke defrauded her.

On appeal from a judgment entered following a jury-waived trial, we review the trial judge's findings of fact for clear

12

error and review de novo her rulings on questions of law. Central Ceilings, Inc. v. Suffolk Constr. Co., 91 Mass. App. Ct. 231, 235 (2017).

We first note that Murphy has failed to provide this court with an adequate record of the proceedings below. "It is the obligation of the appellant[] to include in the appendix those [materials] . . ., which are essential for review of the issues raised on appeal (both to determine whether the evidence supports the theory on appeal and whether the issue was properly presented and preserved)." Shawmut Community Bank, N.A. v. Zagami, 30 Mass. App. Ct. 371, 372-373 (1991), S.C., 411 Mass. 807 (1992). See Wooldridge v. Hickey, 45 Mass. App. Ct. 637, 641 (1998) ("A party claiming an insufficiency of evidence, therefore, has the burden on appeal of furnishing the court with all the evidence").

Here, Murphy provided this court with only select exhibits and no trial transcript. Murphy's duty to provide this court with a record adequate to review her claims of error is not diminished because she is self-represented. See Davis v. Tabachnick, 425 Mass. 1010, 1010, cert. denied, 522 U.S. 982 (1997). Consequently, we are unable to review any issue raised based on a claimed clearly erroneous factual finding, and our review is limited to the judge's legal conclusions based on the facts as found. See Mass. R. A. P. 18 (a) (1) (D), as appearing

13

in 491 Mass. 1603 (2023).  See also Smith v. Jones, 67 Mass. App. Ct. 129, 134 (2006) ("As appellant, it is the defendant's obligation to provide an adequate record for review").

a.  Partnership Assets.  Murphy argues the trial court erred by holding that the Trust's assets, including the Property, are assets of the Partnership, of which Clarke and Murphy each held a fifty percent interest.  We disagree.

"All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property."  G. L. c. 108A, § 8 (1).  "[L]and, whatever the aspect of the legal title, may nevertheless be proved in equity to be part of the joint stock of a copartnership, and as such, liable to all the equitable conditions of partnership property."  Fall River Whaling Co. v. Borden, 10 Cush. 458, 461 (Mass. 1852).  "That partnership property may be held in [trust for the partnership], rather than in the name of the partnership, is expressly contemplated by G. L. c. 108A, § 10."  Sullivan v. Lawlis, 93 Mass. App. Ct. 409, 413 (2018).

The parties created the Trust under the terms of the Partnership Agreement for the sole purpose of holding legal title to the Property.  The Partnership Agreement required the Trust to purchase the Property, allocated the parties' beneficial interest in the Trust, and stipulated the lease terms

14

between the Trust and CCI.  Because the essence of the partnership was the management of the Property through the Trust, both are partnership assets.

b.  CCC's failure to pay rent.  It is undisputed that CCC regularly failed to pay the rent owed to the Trust.  However, unlike CCI, for which Clarke was solely responsible, CCC was a corporation jointly owned by Clarke and Murphy.  Murphy's claim for damages based on Clarke's breach of the lease rests on the faulty premise that she owned 100 percent of the Trust.  Instead, Clarke and Murphy owned CCC's profits and losses equally.  They likewise had an equal stake in the Trust.  The goal in awarding "contract damages is that the aggrieved party should be put in as good a position as if the other party had fully performed [quotation omitted]."  Selmark Assocs. Inc. v. Ehrlich, 467 Mass. 525, 543 (2014).  Because any increase in Trust assets from CCC paying rent would be offset by an equal decrease in CCC's assets, Murphy is no worse off than if CCC had paid the rent.  Accordingly, we affirm the trial judge's holding that Murphy suffered no damages from CCC's breach of the lease.

c.  Fraud.  To prove her claim of fraud, Murphy was required to "prove that [Clark] made a false representation of a material fact with knowledge of its falsity for the purpose of inducing [Murphy] to act thereon, and that [she] relied upon the representation as true and acted upon it to [her] damage."

15

O'Connor v. Merrimack Mut. Fire Ins. Co., 73 Mass. App. Ct. 205, 212 (2008), quoting Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963). We discern no error in the trial judge's ruling that the facts do not support a conclusion of fraud based on any of the following claims made by Murphy.

i. Catering jobs. Murphy's claim that Clarke falsely concealed revenue from CCC's catering business during the time period from June through July 2015, thus depriving her of a share of the revenue, finds no support in the record. The judge's findings demonstrate that the catering contracts Clarke secured during this time were not CCC jobs, as CCC had yet to be incorporated. Rather, Clarke had resumed operating CCI out of the Property with Murphy's knowledge in February 2015. The judge's findings show that the parties formed CCC in May 2015 but only began booking jobs in August 2015.

ii. Taxes and utilities. The terms of the lease called for CCI to pay its proportionate share of water/sewer charges and its proportionate share of the increase in real estate taxes. However, as the trustee, Murphy never billed CCI for these charges during the ten-year term of CCI's lease. Murphy did not seek to enforce these provisions until December 2017, after Clarke indicated his desire to dissolve the partnership. The trial judge found Murphy's inaction as the trustee waived CCI's contractual obligations to make the additional water and

16

tax payments to the trust.  See Pear v. Davenport, 67 Mass. App. Ct. 239, 241 (2006) (waiver a question of fact decided from all facts and circumstances surrounding each case).[8]

3.  Appellate costs and fees.  We agree Murphy's appeal is frivolous and allow Clarke's request for appellate attorney's fees and costs.  See Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019); Avery v. Steele, 414 Mass. 450, 455 (1993) ("An appeal is frivolous [w]hen the law is well settled, when there can be no reasonable expectation of a reversal. . . .  The determination whether an appeal is frivolous is left to the sound discretion of the appellate court" [quotation omitted]). In accordance with the procedure specified in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), Clarke may, within fourteen days of the issuance of the rescript in this matter, submit an application for his reasonably incurred attorney's fees and costs with the appropriate supporting materials.  Murphy shall

---

[8] We have not overlooked issues not addressed above.  Any issue not addressed has either been waived by the appellant, or we find the claims do not merit further discussion. Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

17

have fourteen days thereafter to file a response to that application.

Order entered December 14, 2020, affirmed.

Judgment affirmed.

By the Court (Green, C.J., Walsh & Smyth, JJ.[9]),

Clerk

Entered:  August 16, 2024.

---

[9] The panelists are listed in order of seniority.

18